463 A.2d 418

**WEST PENN POWER COMPANY, Appellant,**

v.

**Howard COHEN, Secretary, Pennsylvania Department of Revenue, Appellee.**

Supreme Court of Pennsylvania.

Argued March 7, 1983.

Decided July 26, 1983.

26

R. Scott Shearer, Howell C. Mette, Shearer, Mette & Woodside, Harrisburg, for appellant.

Vincent J. Dopko, Deputy Atty. Gen., Harrisburg, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice:

West Penn Power Company, Appellant, filed this appeal from the May 21, 1982 order of Commonwealth Court[1] denying both appellant's and appellee's (Commonwealth of Pennsylvania, Department of Revenue) motions for summary judgment and denying appellant's request for

---

1. We have jurisdiction under 42 Pa.C.S. § 723(a), providing a right to appeal from a final order of Commonwealth Court entered in a matter properly addressed to that court's original jurisdiction over actions against Commonwealth agencies for mandamus or declaratory judgment.

mandamus. Having granted appellant's request for declaratory judgment, Commonwealth Court, 66 Pa.Cmwlth. 263, 443 A.2d 1366, declared, as a matter of law, that: Public Utility Realty Tax returns need not be routinely settled under the provisions of the Fiscal Code, Act of April 9, 1929, P.L. 343, No. 176, 72 P.S. §§ 1–1804 (1968 and Supp.1982–83), unless the Department of Revenue intends to use the collection provisions of the Code, in which case the Department must settle the return in question. We now affirm and hold that, in the absence of any explicit directive in the Public Utility Realty Tax Act (PURTA), Act of March 10, 1970, P.L. 168, No. 66 and its replacement, Article XI–A of the Tax Reform Code of 1971, added by the Act of July 4, 1979, P.L. 60, No. 1979–27, 72 P.S. §§ 8101–A—8108–A (Supp.1982–83), mandamus will not lie to compel a formal settlement of PURTA taxes by the Department of Revenue. If the Department disagrees with the taxpayer's report and concludes that additional taxes are due the Commonwealth, it is authorized under the provisions of PURTA to enforce the payment by any lawful means. Section 1102–A(c), 72 P.S. § 8102–A(c).[2] The use of settlement procedures for the collection of unpaid taxes are thus within the discretion of the Department under Section 801(d) of the Fiscal Code, 72 P.S. § 801(d). The taxpayer's remedy for overpayment of PURTA taxes is a refund petition under Section 503(a)(4) of the Fiscal Code, which applies to situations where a court has subsequently held an interpretation of a tax law to be erroneous.

I

The facts in this case are as follows. Article VIII of the Constitution of Pennsylvania was amended in 1968 to explicitly subject the real property of public utilities to real estate taxes for the benefit of local taxing jurisdictions. In lieu of the direct imposition of local real estate taxes, however, Article VIII, § 4, authorized the legislature to provide such

2. The language of this section is identical with Section 3 of the original (1970) PURTA.

revenues by levying gross receipts taxes or other special taxes payable to the Commonwealth. An amount equivalent to the revenues which would have been received from real estate taxes imposed on properly assessed utility realty within a local taxing jurisdiction at its particular rate is then distributed to each local taxing jurisdiction.

To implement the constitutional provision, the General Assembly enacted PURTA in 1970. PURTA levied an annual tax of thirty mills on each dollar of the State taxable value of utility realty. This State taxable value is defined in the Act as "[t]he cost of utility realty, less reserves for depreciation and depletion, as shown by the books of account of a public utility. . . ." Utility Realty is defined in Section 2 of the act as:

> all lands, buildings, towers, smoke-stacks and other structures, located within this Commonwealth and owned by a public utility directly or by or through a subsidiary, which are used or are in the course of development or construction for use, in the furnishing, including producing, storing, distributing or transporting, of public utility service; but shall not include (i) easements or similar interests, (ii) railroad rights-of-way and super-structures thereon, (iii) machinery, equipment, pole, transmission tower, pipe, rail or other lines, whether or not attached to such lands, buildings, towers, smokestacks or other structures, and (iv) such realty as is subject to local real estate taxation under any law in effect on April 23, 1968.

Act of March 10, 1970, P.L. 168, No. 66, § 2. In interpreting the act, this Court held in 1977 that dams, dikes and canals used in a utility's pump storage hydroelectric project constitute "machinery and equipment" and are, therefore, excluded from taxation under PURTA. *Commonwealth v. Philadelphia Electric Company,* 472 Pa. 530, 372 A.2d 815 (1977). This decision was based on the language of Section 5:

> Local Assessment of Utility Realty; Initial Assessment; Procedure and Appeals.—(a) It shall be the duty of the several elected and appointed assessors of real property to assess and value all utility realty in the same manner as is

provided by law for the assessment and valuation of real estate.

Act of March 10, 1970, P.L. 168, No. 66, § 5. *See also U.S. Steel Corp. v. Bd. of Assessment and Revision of Taxes of Bucks County,* 422 Pa. 463, 223 A.2d 92 (1966); *Jones & Laughlin Tax Assessment Case,* 405 Pa. 421, 175 A.2d 856 (1961); *Gulf Oil Corporation v. Philadelphia,* 357 Pa. 101, 53 A.2d 250 (1947).

■ Appellant Public Utility timely filed its PURTA tax returns for the year 1969 through 1973 with appellee, Department of Revenue. Payments of the tax shown to be due accompanied those returns. No formal settlement was made by appellee on these returns until March 15, 1977 when the appellee was advised by Official Opinion No. 77–5 issued by the Attorney General [3] that Section 1001 of the Fiscal Code imposes a duty on the Department of Revenue to settle PURTA taxes subject to the Auditor General's audit and approval, pursuant to the procedure set forth in Section 802.[4] Thereafter, appellee began settling all subsequent PURTA tax returns until advised by memorandum of August 6, 1980 that settlements were not required unless "the Department of Revenue is unwilling to accept the PURTA taxpayer's self-assessment." [5] Appellee has not settled appellant's PURTA tax returns for the years 1969 through 1973 and currently issues "settlements" only as a prerequisite to collection proceedings. Stipulation of Facts, Reproduced Record at 80a–81a.

3. Opinions of the Attorney General, 1977–5. That opinion was binding on the agency under the then applicable Act of April 9, 1929, P.L. 177, § 902, 71 P.S. § 292. Under the present Commonwealth Attorneys Act, Act of October 15, 1980, P.L. 950, No. 1980–164, § 204(a), 71 P.S. § 732–204(a) (Supp.1982–83), such an opinion is binding on a Commonwealth agency until such time as the Commonwealth Court issues a final order on a petition by the Governor or the head of the agency requesting a declaratory judgment on the subject matter of the Attorney General's opinion.

4. *Id.*

5. Memorandum from Donald J. Murphy, Chief Commercial, Financial and Governmental Services Division, Department of Justice to Honorable Howard A. Cohen, Secretary of Revenue. Reproduced Record at 132a–133a.

Appellant has in the interim filed petitions for refund under Section 503(a)(4) of the Fiscal Code, 72 P.S. § 503(a)(4), for the years 1969 through 1973. Of these petitions, those filed within five years of the date of the tax return have been granted by the Board of Finance and Revenue. Those filed more than five years after the filing of the annual tax return have been denied, apparently pursuant to the five year statute of repose built into Section 503(a)(4).[6]

## II

■ Appellant now asks us to reverse the lower court's denial of its request for mandamus and order the Department of Revenue to issue formal settlements on its tax returns for the years 1969 through 1973. Mandamus, however, will lie against the Commonwealth or one of its officials *only* where such an official has a clearly ministerial duty to perform; it does not lie to compel performance of a discretionary act or to govern the manner of performing a required act. *Getz v. Lehighton Borough,* 407 Pa. 357, 180 A.2d 230 (1962). Neither the original PURTA nor its 1979 replacement, Article XI–A of the Tax Reform Code, contain any statutory requirement that PURTA tax reports must be settled. Since both the Fiscal Code of 1929 and the Tax Reform Code of 1971 do contain mandatory provisions for the settlement of certain taxes, it is clear that the legislature could and probably would have included such directions if they were deemed appropriate to this type of levy. Section 202 of the Fiscal Code lists fifteen State taxes which the Department of Revenue is required to "settle and collect." [7] The 1971 Tax Reform Code contains a mandate for

6. In the stipulated facts, the parties purport to agree only that the Board of Finance and Revenue dismissed these petitions for lack of jurisdiction. Reproduced Record at 81a.

7. 72 P.S. § 202 provides:
Settlement and collection of State taxes
The Department of Revenue shall have the power, and its duty shall be—

settlement in Part IV of Article IV (Corporate Net Income Tax) which is currently incorporated by reference in its Articles VI, VII, VIII, IX, X and XI but conspicuously omitted in PURTA, Article XI–A. PURTA, on the other

(a) To settle and collect all taxes, penalties, and interest, which are now settled and collected by the Auditor General, or by the Auditor General and State Treasurer;

(b) To settle and collect, from partnerships organized within this Commonwealth, the bonus imposed by law on increases of their capital stock;

(c) To settle and collect, from corporations, limited partnerships, or jointstock associations, chartered or created by or under the laws of any other State, or of the United States, or of any foreign country, the bonus imposed by law upon the amount of their capital actually employed or to be employed wholly within this Commonwealth, and upon each subsequent increase of capital so employed;

(d) To settle and collect the capital stock and franchise taxes imposed by law upon corporations, or interests in jointstock associations, limited partnerships, and companies;

(e) To settle and collect the capital stock tax imposed by law upon the capital stock of corporations, or interests in joint-stock associations; limited partnerships, and companies, incorporated or organized for the purpose of distilling liquors and selling the same at wholesale;

(f) To settle and collect the tax imposed by law upon the scrip, bonds, and certificates and evidences of indebtedness, issued or assumed by private corporations, or upon which such corporations pay interest;

(g) To settle and collect from the treasurers of each county, city, borough, school district, and incorporated district, of this Commonwealth, the tax required by law to be assessed and deducted by such treasurers on the payment of any dividend or interest to any holder or agent claiming the same, on any scrip, bond or certificate of indebtedness issued by such county, city, borough, school district, or incorporated district;

(h) To settle and collect the tax imposed by law upon the gross receipts of any corporation, association, or individual, derived from business done wholly within this Commonwealth;

(i) To settle and collect the tax imposed by law upon shares of the capital stock of banks and savings institutions, located within this Commonwealth, and, for that purpose, to assess the actual value of each share of the stock of any such bank or savings institution in the manner provided by law;

(j) To settle and collect the tax imposed by law upon the shares of the capital stock of title insurance companies and trust companies, located within this Commonwealth, and, for that purpose, to assess the actual value of each share of the stock of any such title insurance company or trust company in the manner provided by law;

hand, explicitly vests enforcement discretion in the Department of Revenue:

> Payment of the tax hereby imposed may be enforced by any means provided by law for the enforcement of payment of taxes to the State. If the tax hereby imposed is not paid by the date herein prescribed, or within any extension granted by the department, the unpaid tax shall bear interest at the rate of one per cent per month, and shall in addition be subject to a penalty of five per cent of the amount of the tax, which penalty may be waived or abated, in whole or in part, by the department unless the public utility has acted in bad faith, negligently, or with intent to defraud.

Section 1102–A(c), 72 P.S. § 8102–A(c).

Appellant would have us find a departmental obligation to settle PURTA returns in the language of Section 1001 of Article X of the Fiscal Code which was relied on in the Attorney General's opinion issued in 1977.[8] Both appellant and the Attorney General have overlooked the plain implica-

(k) To settle and collect the tax imposed by law upon the gross amount of the premiums, premium deposits, and assessments, received from business transacted within this Commonwealth, by insurance companies, associations, or exchanges, incorporated under the laws of this Commonwealth;

(*l*) To settle and collect the tax imposed by law upon full-paid, prepaid, and fully matured, or partly matured stock in building and loan associations, doing business in this Commonwealth, and, for the purpose of collecting such tax from foreign building and loan associations, to make the demand for payment heretofore made by the State Treasury;

(m) To settle and collect the tax imposed by law upon the gross receipts of private bankers;

(n) To settle and collect the tax imposed by section twenty-seven of the act, approved the first day of June, one thousand eight hundred eighty-nine, entitled "A further supplement to an act, entitled 'An act to provide revenue by taxation,' approved the seventh day of June, Anno Domini one thousand eight hundred and seventy-nine" (Pamphlet Laws, four hundred twenty), upon the net earnings of certain corporations and limited partnerships;

(*o*) To settle and collect the tonnage tax imposed by law upon the value of anthracite coal when prepared for market.

8. *See* n. 3, *supra.*

tion of the captions of Articles VIII through XIII of the Fiscal Code which read as follows:

Article VIII. *Settlement of* Bonus and *Tax Accounts.*

Article IX. Procedure for the Collection of Moneys Due the Commonwealth by County or City Officers.

Article X. *Settlement of Other Accounts* Between the Commonwealth and its Debtors and Settlements Between the Commonwealth and Persons Having Claims Against It.

Article XI. Procedure for Resettlement of Accounts, Review and Appeal.

Article XII. Collections Made Otherwise Than by Settlement of Account.

Article XIII. Procedure for Collection of Escheatable Property.

72 P.S. Chap. 1, pp. 5–6 (emphasis added). Viewed in this context it is plain that Article VIII, not Article X, refers to the settlement of tax accounts and the language of Section 1001:

In all cases in which any person, association, corporation, public officer, or other party, is indebted, or is believed to be indebted, to the Commonwealth, and no other method for the collection of such debt is provided by law, it shall be the duty of the Department of Revenue to state and settle an account with the debtor, and transmit the original settlement, with the papers appertaining thereto, to the Auditor General for audit and approval, as in the case of tax settlements, and the subsequent procedure shall be the same as in the case of tax settlements.

72 P.S. § 1001 applies to other debts owed the Commonwealth which are to be handled in a manner analogous to the tax settlement procedures. Moreover, Section 3 of the Act of October 5, 1978, P.L. 1104, 72 P.S. § 4651–4, vests exclusive jurisdiction in the Board of Claims to hear and determine claims formerly settled under the Act of March 30, 1811, P.L. 145, Ch. XCIX and continued by Article X of

the Fiscal Code.[9]  Clearly, there is no discernible legislative intent that Section 1001 should encompass tax settlements nor is there evidence that the Board of Claims was intended by the 1978 act to determine tax liabilities.

### III

Appellant also argues that it has a legal right to a settlement because it has no adequate remedy at law, suggesting that without a formal departmental determination of its tax liability, it is indefinitely subjected to the risk of subsequent claims by the Commonwealth.  Appellant appears to have overlooked the provisions of Article VIII of the Fiscal Code which provides for the "Settlement of Bonus and Tax Accounts." 72 P.S. §§ 801–809.  Section 801 provides for the 1929 redistribution of duties in connection with the settlement of taxes and bonus among the Auditor General, the State Treasurer and the Department of Revenue. The Department is charged under Section 801(a) with the duty of making settlements while the Auditor General is charged, in subsection (c), with auditing and approving the settlements.  Subsection 801(b) specifically requires: "All such settlements shall, as far as possible, be so made that notice thereof may reach the taxpayer before the end of the year succeeding the year for which the tax or bonus report or return was made or ought to have been made."

9.  Section 4 of the Act of May 20, 1937, No. 193 (72 P.S. § 4651-4) was amended by Section 3 of the Act of October 5, 1978, P.L. 1104 to provide

The Board of [Arbitration] Claims shall have *exclusive* jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more. *The board shall also have exclusive jurisdiction to hear and determine those claims authorized by the act of March 30, 1811 (P.L. 145, Ch. XCIX), entitled "An act to amend and consolidate the several acts relating to the settlement of the public accounts and the payment of the public monies, and for other purposes," and continued.by Article X, act of April 9, 1929 (P.L. 343, No. 176), known as "The Fiscal Code," wherein the Auditor General and State Treasurer were granted the power to adjust and settle certain claims against the Commonwealth.*

We have previously held that this language,[10] while precatory in tone, requires the invalidation of any settlement made by the Department after the expiration of the statutory period, unless the Department can provide reasonable justification for the delay.

The law with regard to timeliness of settlement has been articulated by this Court on three prior occasions. In *Commonwealth v. Allied Building Credits, Inc.*, 385 Pa. 370, 123 A.2d 686 (1956), it was held that when a tax settlement is made after the expiration of the time limit set out by statute, the settlement cannot stand absent affirmative proof by the taxing department that it was not possible to make the settlement within the required time. A decade later in *Commonwealth v. Safe Harbor Water Power Corp.*, 423 Pa. 101, 104, 223 A.2d 223 (1966), this Court reaffirmed *Allied* and summarized the applicable legal principles as follows: "(1) [I]f a settlement is not made within the time provided by the statute, the burden is upon the Commonwealth to explain why the settlement should not be held invalid because of lateness; (2) the justification for permitting the Commonwealth to explain in the first instance is the presence of the phrase 'so far as possible' in § 8(a) of the Act [Corporate Net Income Tax Act]; [6] (3) this phrase relieves the Commonwealth from compliance with the time requirements of the statute under circumstances wherein the Commonwealth was unable to act at all or, though able to act, was under some disability which prevented it from acting promptly; (4) what constituted such circumstances is a question which must be determined on the facts of each case." The opinion added the qualification that "without completely foreclosing the possibility that in a given case something may occur other than an act by the taxpayer itself which prevents settlement, we believe that the only general basis

10. In addition to the general language of Section 801(b) in the Fiscal Code, similar language is found in Section 8 of the Act of May 16, 1935, P.L. 208, § 8, as amended, 72 P.S. § 3420h. The latter act was repealed and replaced by the Act of March 4, 1971, P.L. 86, No. 2, Art. IV.

for excusing a late settlement is when the taxpayer does something to delay timely action." Id., 463 Pa. at 105 [223 A.2d 223].

In summary, while both Section 801(b) of The Fiscal Code and Section 8(a) of the Corporate Net Income Tax Act have been interpreted as placing an affirmative duty on the Department of Revenue to settle these corporate taxes within one year, it has also been recognized that extenuating circumstances can, if proven, relieve the authorities from strict compliance with the statutory limitation. Lest these provisions become more honored in their breach, which was never the legislative intent, we have been most discriminating in determining what constitutes acceptable excusing circumstances. See *Commonwealth v. Safe Harbor Water Power Corp., supra,* and *Commonwealth v. Western Maryland Railway Co., supra.*

---

[6] The phrase "so far as possible" and "as far as possible" contained in the two statutory provisions presently under consideration are regarded as synonymous. See *Commonwealth v. Western Maryland Railway Co.,* 435 Pa. 525, 257 A.2d 530 (1969).

*Commonwealth v. Wanamaker,* 450 Pa. 77, 82–83, 296 A.2d 618, 620–621 (1972).

Appellant's argument is thus without merit.

## IV

Appellant's interest in obtaining a formal departmental settlement at this time obviously arises from our decision in *Commonwealth v. Philadelphia Electric Company, supra,* which substantially reduced the PURTA tax liabilities of public utilities for 1969–1973. Were we now to hold that appellee Department of Revenue must routinely provide PURTA taxpayers with a formal settlement, appellant arguably might have an additional remedy for recovering payments on the value of "machinery and equipment" not recovered under the petitions for refund previously filed.

■ The Constitution of Pennsylvania specifically requires that refunds of moneys legally paid into the treasury be

governed by general legislative enactments.[11]   In compliance with this constitutional stricture, the legislature has enacted Section 503 of the Fiscal Code providing for several generally recurring situations in which a taxpayer which erroneously overpaid its tax liability is, in justice, entitled to a refund. Appellant's case fits squarely into the provisions of Section 503(a)(4):

> The Board of Finance and Revenue shall have the power, and its duty shall be,
>
> (a) Except as hereinafter provided with respect to the Department of Transportation, to hear and determine any petition for the refund of taxes, license fees, penalties, fines, bonuses or other moneys paid to the Commonwealth and to which the Commonwealth is not rightfully or equitably entitled and, upon the allowance of any such petition, to refund such taxes, license fees, penalties, fines, bonuses or other moneys, out of the fund into which such taxes, license fees, penalties, fines, bonuses or other moneys were originally paid, or to credit the account of the person, association, corporation, body politic, or public officer entitled to the refund. . . .   All such petitions must be filed with the board within two years of the payment of which refund is requested, or within two years of the settlement in the case of taxes or bonus, whichever period last expires, except
>
> . . . .
>
> (4) When any tax or other money has been paid to the Commonwealth, under a provision of an act of Assembly subsequently held by final judgment of a court of competent jurisdiction to be unconstitutional, or under an interpretation of such provision subsequently held by such court to be erroneous.   In such case, the petition to the board may be filed either prior or subsequent to such final judgment but must be filed within five years of the payment of which a refund is requested, or within five years of the settlement of such taxes, bonus or other moneys due the Commonwealth, whichever period last

11.   Article III, Section 32, Clause 7.

expires. The board shall have jurisdiction to hear and determine any petition for refund filed prior to such final judgment only if, at the time of the filing thereof, proceedings are pending in a court of competent jurisdiction wherein the claims of unconstitutionality or erroneous interpretation made in the petition for refund may be established, and in such case the board shall not act upon the petition for refund until the final judgment determining the question or questions involved in such petition has been handed down.

72 P.S. § 503(a)(4). Under this section, the Board of Finance and Revenue has properly granted those petitions for refund appellant filed within five years of payment for taxes paid on utility property subsequently held not to be subject to taxation by our decision in *Commonwealth v. Philadelphia Electric.* The Board has properly refused to make refunds on those petitions filed more than five years after payment. *Universal Film Exchanges, Inc. v. Board of Finance and Revenue,* 409 Pa. 180, 185 A.2d 542 (1962), *cert. denied,* 372 U.S. 958, 83 S.Ct. 1015, 10 L.Ed.2d 12 (1963); *Box Office Pictures, Inc. v. Board of Finance and Revenue,* 402 Pa. 511, 166 A.2d 656 (1961); *Calvert Distillers Corp. v. Board of Finance and Revenue,* 376 Pa. 476, 103 A.2d 668 (1954).

Subsequent to our decision in *Commonwealth v. Philadelphia Electric Company,* the General Assembly repealed the original Public Utility Realty Tax Act and reenacted its basic provisions as Article XI–A of the Tax Reform Code of 1971. Act of July 4, 1979, P.L. 60, No. 1979–27, 72 P.S. §§ 8101–A—8108–A. At the same time the General Assembly added specific provisions imposing a special surtax for the fiscal year 1979–80 and, acknowledging the applicability of the refund provisions of the Fiscal Code, limited the filing of PURTA refunds to those petitions filed with the Board of Finance and Revenue on or before the first day of July 1980.

In order to implement the provisions of subsection (d), notwithstanding any provisions of section 503 of the act of April 9, 1929 (P.L. 343, No. 176) known as "The Fiscal

Code," which may allow a more extended time for filing, no petition for refund of the tax imposed by the act of March 10, 1970 (P.L. 168, No. 66), known as the "Public Utility Realty Tax Act," arising out of or supported by the interpretation of the previous definition of "utility realty" in the "Public Utility Realty Tax Act," as construed by the decision of the Supreme Court of Pennsylvania in *Commonwealth v. Philadelphia Electric Company,* 472 Pa. 530 [372 A.2d 815] (1977) shall be timely unless said petition has been filed with the Board of Finance and Revenue on or before the first day of July 1980.

72 P.S. § 8103–A(e) (emphasis added). Under the terms of Section 1933 of 1 Pa.C.S., this latter provision would bar any future petitions for refunds of 1969–73 PURTA taxes.

Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

## V

■■■ Appellant also claims it is entitled to an order directing the Department of Revenue to allow it interest on overpayments for any of the years subject to settlement. Since we have concluded the statute does not require settlement, we need not consider the interest claim insofar as it relates to those years for which the Board of Finance and Revenue disallowed appellant's claims for refunds. Insofar as appellant's claim for interest relates to a refusal to award interest on the refund claims which were granted by the Board, it cannot be asserted in this mandamus action since the statutory remedy of appeal from the decision of the Board was adequate. *See Canonsburg General Hospital v.*

*Dept. of Health,* 492 Pa. 68, 74, 422 A.2d 141, 144 (1980); *Valley Forge Racing Association v. State Horse Racing Commission,* 449 Pa. 292, 297 A.2d 823 (1972). Moreover, even if the interest claim on refunds allowed by the Board were properly cognizable in mandamus we could not find that its disallowance under all the circumstances in this case was inequitable. *See Commonwealth v. Philadelphia Gas Works,* 484 Pa. 60, 69–70, 398 A.2d 942, 947 (1979) and *Purdy Estate,* 447 Pa. 439, 291 A.2d 93 (1972). In this last connection we note the claimed overpayments, with respect to which refunds and interest on such refunds were disallowed, were initially made without protest.

For the foregoing reasons, we affirm the order of Commonwealth Court.