**SAFE HARBOR WATER POWER CORPORATION, Petitioner,**

v.

**Robert A. JUDGE, Sr., Secretary of Revenue, Respondent.**

**PP & L, Inc., f/k/a Pennsylvania Power & Light Company, Petitioner,**

v.

**Robert A. Judge, Sr., Secretary of Revenue, Respondent.**

**Interstate Energy Company, Petitioner,**

v.

**Robert A. Judge, Sr., Secretary of Revenue, Respondent.**

**PG Energy, Inc., f/k/a Pennsylvania Gas & Water Company, Petitioner,**

v.

**Robert A. Judge, Sr., Secretary of Revenue, Respondent.**

**West Penn Power Company, Petitioner,**

v.

**Robert A. Judge, Sr., Secretary of Revenue, Respondent.**

**Potomac Edison Company, Petitioner,**

v.

**Robert A. Judge, Sr., Secretary of Revenue, Respondent.**

**Monongahela Power Company, Petitioner,**

v.

**Robert A. Judge, Sr., Secretary of Revenue, Respondent.**

**Peco Energy Company, Petitioner,**

v.

**Robert A. Judge, Sr., Secretary of Revenue, Respondent (Two Cases).**

**UGI Utilities, Inc., Petitioner,**

v.

**Robert A. Judge, Sr., Secretary of Revenue, Respondent.**

Luzerne Electric, Division of UGI
Utilities, Inc., Petitioner,

v.

Robert A. Judge, Sr., Secretary
of Revenue, Respondent.

Peoples Natural Gas Company,
Petitioner,

v.

Robert A. Judge, Sr., Secretary
of Revenue, Respondent.

CNG Transmission Corporation,
Petitioner,

v.

Robert A. Judge, Sr., Secretary
of Revenue.

Allegheny Electric Cooperative,
Inc., Petitioner,

v.

Robert A. Judge, Sr., Secretary
of Revenue, Respondent.

Duquesne Light Company, Petitioner,

v.

Robert A. Judge, Sr., Secretary
of Revenue, Respondent.

National Fuel Gas Distribution
Corporation, Petitioner,

v.

Robert A. Judge, Sr., Secretary
of Revenue, Respondent.

National Fuel Gas Supply Corporation,
Petitioner,

v.

Robert A. Judge, Sr., Secretary
of Revenue, Respondent.

New York State Electric & Gas
Corporation, Petitioner,

v.

Robert A. Judge, Sr., Secretary
of Revenue, Respondent.

Pennsylvania Power Company,
Petitioner

v.

Robert A. Judge, Sr., Secretary

of Revenue, Respondent.

Ohio Edison Company, Petitioner,

v.

Robert A. Judge, Sr., Secretary
of Revenue, Respondent.

Cleveland Electric Illuminating
Company, Petitioner,

v.

Robert A. Judge, Sr., Secretary
of Revenue, Respondent.

Toledo Edison Company, Petitioner,

v.

Robert A. Judge, Sr., Secretary
of Revenue, Respondent.

Commonwealth Court of Pennsylvania.

Argued May 19, 1999.

Decided Aug. 16, 2000.

R. Scott Shearer and Robert L. Weldon, Harrisburg, for petitioners.

Daniel J. Doyle, Harrisburg, for respondent.

Before DOYLE, President Judge, COLINS, Judge, SMITH, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, FLAHERTY, Judge, LEADBETTER, Judge.

FLAHERTY, Judge.

Twenty-two gas and electric companies (Petitioners) have filed in this Court's original jurisdiction individual petitions for review which have been consolidated (Petitions), seeking declaratory and injunctive relief to declare invalid certain portions of the Public Utility Realty Tax Act (PURTA)[1] and seeking monetary relief from being required to pay a supplemental additional PURTA tax assessment (Suptax). One of the twenty-two petitioners, Allegheny Electric Cooperative, Inc. (Allegheny Coop), makes the additional allegation in its Petition that PURTA does not apply to it at all because it has been judicially declared not to be a public utility and has not been proven to own public utility realty to provide "a public utility service" as required by PURTA.

Before the Court are the same three preliminary objections (POs) filed to each Petition by the Commonwealth's Attorney General (Commonwealth), representing the Respondent, Robert Judge, Pennsylvania's current Secretary of the Department of Revenue (DOR).[2]

---

1. Act of March 4, 1971, P.L. 6, No. 2, *as amended*, 72 P.S. §§ 8101–A–8108–A.

2. Hereinafter, DOR shall mean the actions of the Department of Revenue in assessing and collecting the tax *prior* to the litigation. "Respondent" shall mean the actions of the Department or Commonwealth/Attorney General in regard to the litigation.

■ The three POs filed by the Commonwealth assert only that the POs should be granted because the Petition fails to state a claim as a matter of law because: 1) the actions of DOR are neither unlawful or unconstitutional; 2) PURTA does not violate either the Pennsylvania or United States Constitution; and 3) DOR's regulations are neither unlawful nor unconstitutional.[3] We overrule the POs.[4]

The critical question before the court is one of first impression to determine whether or not the Department of Revenue (DOR) is required to "settle" the Suptax with the taxpayer. "Settle" is the process of making "an administrative determination of any amount owed by the taxpayer," e.g. where DOR gives the taxpayer a detailed statement of how the tax was calculated. Without a settlement, Petitioners claim they, as taxpayers, are unable to access the required information necessary to request a refund or contest the tax in the form of an administrative appeal.

Prior to the 1968 constitutional amendments, public utility owned real property was not subject to local real estate taxation without specific legislative action. Article 8, Section 4 of the 1968 Pennsylvania Constitution attempted to eliminate that exemption.[5] Because public utilities own very expensive pieces of real estate in one area that services large portions or entire regions of the state, the legislature enacted PURTA to spread the equivalent of the real estate tax receipts from all utilities proportionately among all local taxing authorities (LTAs) in Pennsylvania in lieu of local real estate taxes.

PURTA permits the Commonwealth to collect the equivalent of a local real estate tax from utilities "at the rate of thirty mills upon each dollar of the State taxable value of its utility realty at the end of the preceding calendar year." 72 P.S. § 8102–A(a). Under PURTA, DOR collects the tax from the utilities and distributes those tax revenues to LTAs throughout Pennsylvania, such as, counties, municipalities and school districts. The total real estate tax which the LTAs collectively could otherwise have imposed directly on utility real estate (the "realty tax equivalent") forms the basis for the PURTA subsidy and is distributed back to the LTAs based upon a formula intended to replace the amount of tax foregone by the LTAs not levying a real estate tax on the public utilities.

Initially, the basic PURTA tax, (the surtax), is self-assessing, i.e., each year before

---

**3.** Eighteen issues and three sub-issues have been raised in the Commonwealth's Brief in Support of POs.

**4.** In making an adjudication of preliminary objections, this Court must accept as true all well-pleaded facts and all inferences reasonably deducible therefrom. We need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them. *Dorfman v. Pennsylvania Social Services Union–Local 668 of the Service Employees International Union, et. al.,* 752 A.2d 933, (Pa.Cmwlth 2000).

**5.** Article 8, Section 4 provides:

The real property of public utilities is subject to real estate taxes imposed by local taxing authorities. Payment to the Commonwealth of gross receipts taxes or other special taxes in replacement of gross receipts taxes by a public utility and the distribution by the Commonwealth to the local taxing authorities of the amount as herein provided shall, however, be in lieu of local taxes upon its real property which is used or useful in furnishing its public utility service. The amount raised annually by such gross receipts or other special taxes shall not be less than the gross amount of real estate taxes which the local taxing authorities could have imposed upon such real property but for the exemption herein provided. This gross amount shall be determined in the manner provided by law. An amount equivalent to such real estate taxes shall be distributed annually among all local taxing authorities in the proportion which the total tax receipts of each local taxing authority bear to the total tax receipts of all local taxing authorities, or in such other equitable proportions as may be provided by law. Pa. Const. Art. 8 § 4.

June 1, the utility taxpayer calculates how much tax it owes under PURTA. The taxpayer must make the calculation, submit it on a DOR form and pay the surtax (much like the process for filing a Pennsylvania or Federal income tax return).[6] If DOR feels that the taxpayer owes additional tax, DOR must challenge the taxpayer's calculation but, in that event, DOR, not the utility taxpayer, makes the calculation and assesses the taxpayer an additional supplemental tax, (the Suptax).[7]

On December 22, 1998, DOR sent notices to the Petitioners of its assessment and determination of the 1997 Suptax demanding payment of taxes due by the individual Petitioners ranging in amounts from thousands of dollars to $22,314,816.[8]

Petitioners allege that the Suptax notices provided insufficient information for them to determine whether or not they actually owed the additional taxes under the statute. Petitioners further complain that these notices are the only official contact that DOR made with the utilities and that DOR refused to issue any official tax settlements of the additional PURTA tax. In the Petitions, the following questions are raised which Petitioners claim have not yet been determined and raise questions of fact material to the outcome on the merits.[9]

6. From 1970 until 1994, the total PURTA surtax revenues collected from the utilities exceeded the PURTA subsidy. 1994 was the first year that the surtax collected did not cover the subsidy due back to the LTAs. The 1994 additional supplemental tax is not at issue here.

7. The Suptax was levied here by the Department's sending a one page form, "1997 Notice of Additional Assessment and Determination pursuant to Title 72 P.S. § 8104–A(b)," (the 1997 Notice) which basically sets forth the following in pertinent part:

> "[O]n or before October 1 of each year, the Department of Revenue shall distribute to each local taxing authority its share of the total realty tax equivalent. Funding for this distribution is indirectly linked to the Public Utility Realty Tax (PURTA) collected from utility companies under Title 72 P.S. § 8102(A)(a). If in any calendar year the amount determined by the Department pursuant to the amount determined by the Department pursuant to § 8107–A shall exceed the total amount of tax collected pursuant to § 8102–A(a), the Department shall determine the ratio which the amount of such excess bears to the total state taxable value of all utility realty reported to it pursuant to § 8102–A(b). *In the event that the amount of the distribution exceeds the amount of tax collected,* the Department of Revenue *is required to assess an additional tax.* ... You have 45 days from the date of this notice to remit or satisfy your pro-rata share of additional tax. Failure to timely remit may result in the assessment of interest and underpayment penalties." (Emphasis added.)

The notice also stated:
1. Tax period
2. The Realty Tax Equivalent amount
3. The state taxable value amount
4.a. Taxpayer's taxable value amount × PURTA assessment ratio = amount due
   b. The numbers used in 4a, above, for "Calculation of Reassessment."

Brief in support of Preliminary Objections. Appendix "A" to Petition For Review.

8. When the utilities inquired for more information regarding the Suptax, they were furnished only the following information by the Department:

1996 Purta Distribution = $152 million
1996 Term of Purta Liability = $142.7 million
1996 Total Additional Assessment = $15.3 million
1996 Total Taxable Value of all Realty Property = $4.7 billion
Formula: Taxpayers Taxable Value × Ratio
a. Ratio = $\frac{\text{Purta Distribution—Sum of Purta Tax Liability}}{\text{Total Taxable Value of All Realty Property}}$
b. $\frac{157.6 - 142. \text{ (in millions)}}{4.7 \text{ (in millions)}} = .0032228$

Brief in Opposition to Preliminary Objections. Appendix "A" to Petition For Review.

9. Petitioners specifically complain that they have no information upon which to verify the following:

1. The amount of the "1997 realty tax equivalent", which is the amount of the subsidy remitted to the LTAs and is based upon information submitted each year to the DOR by several thousand LTAs.
2. The "1997 state taxable value of utility realty" throughout the Commonwealth.

The Commonwealth argues that *West Penn Power Co. v. Cohen*, 66 Pa.Cmwlth. 263, 443 A.2d 1366, 1367 (1982) (*West Penn Power I* ), holds that the Commonwealth is exempt from settling the surtax in PURTA, so it is applicable also to the Suptax here and, therefore, all PURTA taxes do not have to be settled, that DOR provided all information required by statute and that the statute is constitutional.

The Commonwealth Court held in *West Penn Power I*, that the standard PURTA surtax does not require settlement because the surtax is self-assessing and self-paying. Because the Suptax is **not** self-assessing (it is an assessment made by DOR), however, this holding on the surtax does not apply. This material difference clearly affects the taxpayer's constitutional right to administrative remedies found necessary by the Commonwealth and Supreme Courts. In *West Penn Power Co. v. Cohen*, 502 Pa. 25, 463 A.2d 418 (1983) (*West Penn Power II* ), the Supreme Court held that once DOR intends to use the collection process it must settle the return:

> Commonwealth Court ... declared as a matter of law, that: Public Utility Tax Returns need not be routinely settled under the provisions of the Fiscal Code... *unless the Department of Revenue intends to use the collection provisions of the Code, in which case the Department must settle* the return in

question. We now affirm .... The use of settlement procedures for the collection of unpaid taxes are thus within the discretion of the Department under Section 801(d) of the Fiscal Code. 72 P.S. 801(d). (Emphasis added.) [10]

*Id*, 502 Pa. at 25, 463 A.2d at 420.

■ The only real question remaining is whether DOR's notice of Suptax constitutes an intention to use the collection provisions of Section 801(d) of the Fiscal Code thereby requiring DOR to settle in accordance with *West Penn Power I* and *II*. In view of the collection process described in Section 801(d) of the Fiscal Code, once DOR is not satisfied with the appraisement, evaluation or payment of any tax, including the PURTA surtax, and makes a valuation of the return upon which the surtax is based, it has thereby exercised its discretion to settle an account on the valuation. In the instant case, DOR initiated collection procedures by sending Petitioners the 1997 notice.[11]

In the case *sub judice*, the Petitioners have completed their self-assessment which has obviously not satisfied DOR. DOR has made its own valuation of the return and has notified the utilities of its intent by demanding the Suptax. Thus, DOR has exercised its discretion to collect the Suptax which is not *both* self-assessing *and* self-paying. DOR **is**, therefore, re-

---

3. The computation of the total state taxable value amount of the realty.
4. The computation of the assessment ratio which determines the amount of the assessment to each utility.
5. Whether the numbers, formulas and calculations were properly made by the DOR.
6. Whether the LTAs employed the proper millage or other calculations regarding their gross receipts, whether they were properly reported or submitted by the LTAs (by April 1 as required by PURTA).
7. Whether the Commonwealth conducted audits to verify the accuracy of the reports or what the results of the audits were.
8. Whether any utility was afforded the opportunity to participate in such au-

dits as required by the DOR regulations.

10. Section 801(d) of the Fiscal Code states:

   *"If the Department of Revenue shall not be satisfied with* the appraisement and valuation of capital stock, or of property or capital, located and used within the Commonwealth, and *payment of tax, as made* and returned by the officers of any corporation..., it is hereby authorized and empowered to make a valuation thereof based upon facts contained in the report or based upon facts contained in the report or return made...or upon any information within its possession or that shall come into its possession, *and to settle an account on the valuation thus made....*" (Emphasis added.) Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. § 801(d).

11. *See* footnote 7, *supra*.

quired to settle the tax prior to such collection. *West Penn Power I* and *II.*

Section 1102–A(c) of PURTA provides that payment of the tax imposed may be enforced by any means provided by law.[12] Further, Section 1001 of the Fiscal Code requires DOR to settle an account with the debtor in all cases in which "a . . . party . . . is believed to be indebted to the Commonwealth and no other method for the collection of such debt is provided by law. . . ."[13] In *West Penn Power I,* Sections 1102–A of PURTA and 1001 of the Fiscal Code were held inapplicable because West Penn was not indebted to the Commonwealth because West Penn had not yet made its self-assessment and payment, so the Commonwealth had no need for or intention to use the collection provisions of the Code. Thus, the use of settlement procedures is completely within the discretion of DOR because the collection process does not start under PURTA until DOR decides to try to collect the Suptax or it challenges the surtax after the utility files its self-assessment. Once the notice was given that the Suptax was due within 45 days or interest and penalties may be forthcoming, DOR obviously intended to use the collection provisions of Section 801(d) of the Code. In accordance with *West Penn Power I* and *II,* therefore, DOR is now compelled to settle the taxes with the Petitioners.

Petitioners also contend that the scheme for the additional assessment is violative of the constitution, PURTA and the regulations because it does not comply with the procedures employed for the assessment and payment of the regular PURTA tax, but the Petitioners miss the point on this contention. The PURTA statute itself, and the Suptax, are not violative of such laws. It is DOR's implementation of this Suptax provision without settlement that violates the utilities' rights. The Suptax is based on a utility's state taxable value of all utility realty multiplied by the PURTA assessment ratio. Petitioners need to possess the calculation of reasonable information in order to determine if the Suptax assessed and imposed upon them is statutory and accurate.

DOR is required to settle certain taxes with the taxpayer. The Courts have only exempted the PURTA surtax because it is self-assessing and self-paying, does not normally require DOR to exercise any discretion to collect that which is already paid and obviates the need for any collection procedures unless the revenues are insufficient, in which case, DOR has to collect a Suptax. Therefore, because the Suptax is neither self-assessing nor self-paying, it is not exempt from settlement and falls within the type of tax that is required to be settled prior to the Commonwealth collecting and levying on it. DOR's use of the collection provisions of the Fiscal Code without settlement violates the *West Penn Power I* and *West Penn Power II* decisions that prior to using the collection provisions to collect a tax, DOR must settle the tax.

Further, since DOR is subject to settlement on the Suptax, DOR is required to issue a detailed settlement for such additional tax, which settlement is subject to a statutorily defined administrative appeal process without the necessity and burden of prepayment. This settlement process is the only mechanism which protects the rights of the utilities. Currently, in calculating and assessing the Suptax, DOR does not issue any kind of a settlement. Additionally, DOR uses information that is outside the possession, access and/or knowledge of the taxpayer and may be based upon assumptions or calculations unknown to the taxpayer.

The action by DOR in demanding payment of the Suptax from Petitioners without first settling the Suptax with each taxpayer also violates the regulatory scheme established by the Legislature in Section 1001 of the Fiscal Code. Now, the

---

**12.** 72 P.S. § 8102–A(c).

**13.** 72 P.S. § 1001.

normal time for settlement of the taxes has expired. If the taxes are not settled, the taxpayers will suffer violations of their constitutional rights. Commonwealth contends that Petitioners should pay the Suptax and then file refund claims. A refund claim is not an adequate or appropriate remedy for the taxpayers in these cases. Substantial taxes were intended to be collected by DOR from the taxpayer Petitioners without a reasonable explanation, let alone a hearing. DOR has not provided the taxpayers with any mechanism to settle the tax as required by the Fiscal Code. The collection process employed by DOR for the assessment and collection of the Suptax does not provide taxpayer Petitioners with the necessary information to contest the taxes in any forum.

The Commonwealth avers that the utilities' problems with any lack of information will be solved merely by first paying the tax as demanded and then filing for a refund. In *Ohio Edison Company v. Commonwealth of Pennsylvania,* 70 Pa. Cmwlth. 343, 453 A.2d 50 (1982), the court noted that the burden of proof in a refund petition is on the taxpayer. Here, Petitioners cannot meet their burden of proof in the refund process because the documents, assumptions, determinations and calculations are in the exclusive control of DOR. Without such information a refund petition cannot be properly drafted and there would be no substantial evidence in the record to sustain an administrative appeal to the Board of Finance and Revenue or to this Court. Similar issues were raised by the utilities in *Ohio Edison* where the Commonwealth also refused to answer the utilities' questions about the surcharge under PURTA. This Court remanded the PURTA surcharge back to DOR, because DOR

> presented no strong reason why the government's interests required that this determination should have been made without notice or opportunity to be

heard by the affected utilities, we conclude that some type of minimal due process is required to protect the utilities' due process rights. Without an opportunity to at least submit questions and written objections to the calculation of this surtax, the utilities were precluded from receiving even a modicum of due process rights.

*Id.* at 54.

Respondent's POs have not established that the law will bar recovery if Petitioner's prove their allegations. In addition, because the Petitioners are without the information necessary to make a determination of the amount of tax owed, if any, there are material facts of the case still at issue and therefore, POs cannot be sustained.

Finally, Respondent raises a further defense in its brief to the claims of Allegheny Coop and attempts to have that claim dismissed on separate grounds. Respondent contends that the *Ohio Edison* case and PURTA support its contention that PURTA does apply to electric cooperatives. Petitioners contend that the additional claim of exemption as a cooperative made by Allegheny Coop separately from the other Petitioners was not addressed in the Commonwealth's POs, but was raised for the first time in the Commonwealth's brief and should be dismissed.

In a further response which obviously goes to the merits of Allegheny Coop's separate additional allegations in its Petition, however, Allegheny Coop alleges that it is not subject to PURTA since it is not a public utility under PURTA because it does not provide a public utility service to the public within the meaning of PURTA, does not own public utility realty which can be taxed as such and, also, because the Supreme Court has specifically found that Allegheny Coop is *not* a public utility. *Pennsylvania Electric Company v. Morrison,* 354 Pa. 472, 47 A.2d 810 (1946).[14]

■ Respondent's POs simply demurred to AEC's Petition For Review on

---

14. "[N]o matter how similar a cooperative and a public utility may be in fact, a coopera-tive is not a public utility within the meaning of the Public Utility Law. Sec. 2(17)(g) [now,

the grounds it failed to state a cause of action because the actions and regulations of DOR and certain statutes challenged were all lawful. Nowhere do the POs address as a dispositive issue AEC's claims for a tax exemption or whether AEC provides a public utility service or owns any utility realty within the meaning of PUR-TA.[15] In fact, it is not until the brief was filed that the AEC tax exemption was objected to by Respondent and, even then, the other claims regarding public utility service and realty ownership are not addressed anywhere. Since Respondent did not raise the issue of AEC's tax exemption in its pleading, the time period for a response to that issue expired by the time the brief was filed. Under Rule 1028(b) of the Pennsylvania Rules of Civil Procedure, all preliminary objections must be raised at one time. Those rules also clearly contemplate such objections being raised for the first time in a pleading, not in a brief. Respondent's attempt to plead by a brief is rejected.

■ In any event, even if Respondent's violation of the Rules were overlooked, AEC's allegations in its Petition that it is not a public utility and is tax exempt are issues which require a factual record to be developed and, obviously, are also not subjects which can be resolved on the basis of the POs filed. AEC's claim that it is not taxable within PURTA's definition of whether or not it is taxable depends upon whether it is "furnishing public utility service." There are no facts of record other than those in the Petition which allege the contrary. In adjudicating POs, all facts are assumed true and in the light most favorable to the complainant. Until issue

is joined by way of a responsive pleading and facts are developed of record to determine whether AEC provides "a public utility service" under Section 1101–A(2) of PURTA, it does not yet appear of record that AEC is a public utility which owns public utility real estate and which would owe PURTA taxes.

In summary, the Department has exercised its discretion to employ a different collection scheme for the Suptax than the PURTA surtax which is self-assessing and self-paying. It is, therefore, required to settle the Suptax before using the collection procedure in the 1997 Notice. The matter should proceed with further pleadings and hearing, if necessary, to afford the Petitioners minimal due process by permitting the utilities to review sufficient details of DOR's calculations, assumptions and determinations used in arriving at the Suptax obligations for each respective utility it has assessed and initiated collection procedures against.

We do, therefore, overrule the POs of the Commonwealth with respect to all twenty-two Petitioners.

### ORDER

AND NOW, this 16th day of August, 2000, the Preliminary Objections of Respondent are overruled and Respondent is ordered to file answers to the Petitions within twenty (20) days from receipt of this order.

Judge LEADBETTER dissents.

---

Act of July 1, 1978, P.L. 598, No. 116, *as amended,* 66 Pa.C.S. § 102.] of that statute expressly provides that 'The term "Public Utility" shall not include * * * (b) any bona fide cooperative association which furnishes service only to its stockholders or members on a nonprofit basis; * * *.' ... The proposed Allegheny Electric Cooperative, Inc. will be empowered, as the Act permits, to generate electric energy and to distribute and sell electric energy to its stockholders or

members on a non-profit basis. Thus, it qualifies as a true cooperative and is therefore not a public utility as a matter of law." *Pennsylvania Elec. Co.,* 354 Pa. at 476, 47 A.2d at 812.

**15.** Section 1101–A(2) of PURTA defines a public utility as including "any electric cooperative corporation ... furnishing public utility service." 72 P.S. § 8101–A(2).