PP& L, INC., Petitioner,

v.

COMMONWEALTH of Pennsylvania, Respondent.

Commonwealth Court of Pennsylvania.

Argued June 2, 2003.

Decided July 15, 2003.

---

Robert L. Weldon, Harrisburg, for petitioner.

Kevin A. Moury, Harrisburg, for respondent.

Before COLINS, President Judge, SMITH–RIBNER, J., and LEADBETTER, J.

OPINION BY President Judge COLINS.

PP&L petitions for review of the order of the Board of Finance and Revenue upholding the denial of its petition for refund of 1997 public utility realty tax.

The court adopts the facts as stipulated by the parties. In April 1998, PP&L filed its 1997 utility realty tax report pursuant to Section 1102–A(b) of the law known as the Public Utility Realty Tax Act (PURTA),[1] showing a state taxable value of $1,002,082,237 for a self-assessed payment

of $42,087,454. In August 1998, PP&L filed a petition for refund with the Board of Appeals averring that it overstated the value of its utility realty, that similarly situated utilities valued their utility realty in a manner distinct from that applied by PP&L, and that it was entitled to revalue its utility realty based on the revised value agreed to by the Public Utility Commission (PUC) when it approved PP&L's plan for restructuring. The Board of Appeals denied the petition for refund, as did the Board of Finance and Revenue.

PP&L filed a restructuring plan with the PUC on April 1, 1997, the earliest date for filing a restructuring plan in accordance with the Electricity Generation Customer Choice and Competition Act (Competition Act).[2] The PUC entered a final order in full settlement of the restructuring plan in August 1998. In accordance with the approved restructuring plan and a required change in its method accounting,[3] PP&L wrote down the cost of its electric generation assets on its books of account in 1998. PP&L prepared its 1998 annual report to shareholders based on books of account prepared according to SFAS Nos. 101 and 121. Pursuant to SFAS No. 121, PP&L wrote down the cost of its "impaired" utility generation assets.[4] PP&L's

1. Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 8102 A(b). PURTA was amended by the Act of May 12, 1999, P.L. 26. Unless otherwise specified, all cites to PURTA in this opinion refer to the Act as it read in 1997.

2. 66 Pa.C.S. §§ 2801–2812. The Competition Act was enacted in December 1996 and became effective January 1, 1997.

3. PP&L adopted the accounting principles embodied in Statement of Financial Accounting Standard (SFAS) Nos. 101 and 121, and discontinued the application of SFAS No. 71, which no longer applied to the enterprise's operations in light of deregulation.

4. The Introduction to SFAS No. 121 states:

Long-lived assets such as plant and equipment generally are recorded at cost, which is usually fair value at the date of acquisition. The original cost usually is reduced over time by depreciation (amortization) so that the cost of the asset is allocated to the periods in which the asset is used. That practice has been modified in some circumstances when an asset has been determined to be impaired, in which case the asset has been written down to a new carrying amount that is less than the remaining cost and a loss has been recognized.
(Stipulation of Facts, Exhibit L.) Impairment refers to circumstances in which an asset's carrying amount may not be recoverable, e.g.,

1998 annual report reflects a decline in the value of its electric generation assets of $2,388,000,000 from December 31, 1997 through December 31, 1998.

Before this Court,[5] PP&L again argues that it overvalued the utility realty on its 1997 utility realty tax report and that it is entitled to a refund consistent with a revaluation that takes into account the write-down of its impaired assets as necessitated by deregulation. As the basis for that argument, PP&L avers that had the PUC approved its restructuring plan before December 31, 1997, it would have written down the value of its electric generation assets in 1997 for purposes of reporting the state taxable value of its public utility realty and that denial of the refund would unfairly place a greater burden on PP&L than on similarly situated utilities that wrote down the value of their assets in 1997. Furthermore, PP&L asserts, denial of the refund violates its due process and equal protection rights and the constitutional uniformity requirement.

For the 1997 tax year, "state taxable value" was defined in pertinent part as "[t]he cost of utility realty, less reserves for depreciation and depletion, as shown by the books of account of a public utility...." PURTA Section 1101–A(4), 72 P.S. § 8101–A(4). Neither the PURTA statute nor case law defines "cost" or the appropriate method of determining "depreciation."

In *PECO Energy Corporation v. Commonwealth*, 828 A.2d 497 (Pa.Cmwlth. 2003), this Court concluded that a utility is not entitled to reduce the value of its utility realty to reflect "impairment" because "depreciation" for the purposes of determining the state taxable value of utility realty does not include a one-time write-down in the value of electric generation assets based on deregulation. Accordingly, PP&L was not entitled to a reduction in the value of its electric generation assets in 1997 for utility realty tax purposes.

Even assuming, purely for the sake of argument, that the statutory definition of state taxable value did permit a utility to adjust the cost of utility realty to reflect the impairment of those assets as a result of deregulation, PP&L acknowledges that the impairment, or devaluation, of its assets occurred after December 31, 1997, when the Competition Act took effect. The statutory definition of state taxable value states unequivocally that the value (i.e., cost less depreciation and depletion) is that shown on the utility's books of account for that given tax year. Nothing in the statute or case law permits a refund of utility realty based on a reduction in value occurring in the following tax year.

Having determined that a utility may not reduce the state taxable value of its utility realty to reflect a one-time write-down in the value of its electric generation assets shown on its financial and regulatory books of account, we need not address PP&L's constitutional claims, which are

---

because of a change in the way the asset is used, a decrease in market value, or continuing operating or cash flow losses associated with an asset used for producing revenue. Id. SFAS 121 requires that a rate-regulated enterprise recognize an impairment when a regulator excludes all or part of a cost from the enterprise's rate base.

**5.** In appeals from the Board of Finance and Revenue, our review is broad because this

Court functions as a trial court, even though such cases are heard in our appellate jurisdiction. *Solar Turbines Inc. v. Commonwealth*, 816 A.2d 362 (Pa.Cmwlth.2003). Questions raised in the petition for review are determined on the record made before this Court; parties may stipulate to facts upon which they agree and issues that remain to be tried. Pa. R.A.P. 1571(f), (h).

based on the alleged inequities that allegedly would result if PP&L was forced to write-down the value of its electric generation assets in 1998 while similarly situated utilities wrote down the value of their electric generation assets in 1997.

Accordingly, we affirm the order of the Board of Finance and Revenue.

### ORDER

AND NOW, this 15th day of July 2003, the order of the Board of Finance and Revenue in the above-captioned matter is affirmed. Exceptions may be filed within 30 days of entry of this order. Pa. R.A.P. 1571(i).