876 A.2d 954

SAFE HARBOR WATER POWER CORPORATION, Appellant,

v.

Gregory C. FAJT, Secretary of Revenue, Appellee,

PP & L, Inc., f/k/a Pennsylvania Power
and Light Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Interstate Energy Co., Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

PG Energy Inc., f/k/a, Pennsylvania Gas
& Water Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

West Penn Power Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Potomac Edison Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Monongahela Power Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellees,

Peco Energy Company, Appellant,

v.

Gregory C. Fajt, Secretary Of Revenue, Appellee,

Peco Energy Power Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

UGI Utilities, Inc., Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Luzerne Electric Division of UGI Utilities, Inc., Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Peoples Natural Gas Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

CNG Transmission Corporation, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Allegheny Electric Cooperative, Inc., Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Duquesne Light Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

National Fuel Gas Distribution Corporation, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

National Fuel Gas Supply Corporation, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

New York State Electric and Gas Corporation, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Pennsylvania Power Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Ohio Edison Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Cleveland Electric Illuminating Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Toledo Edison Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Allegheny Electric Cooperative, Inc., Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

CNG Transmission Corporation, Appellant,

v.

Commonwealth of Pennsylvania, Appellees,

Peoples Natural Gas Company,

Appellant,

v.

Commonwealth of Pennsylvania, Appellees,

New York State Electric and Gas, Appellant,

v.

Commonwealth of Pennsylvania, Appellees,

National Fuel Gas Distribution Corporation, Appellant,

v.

Commonwealth of Pennsylvania, Appellees,

Duquesne Light Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellees,

National Fuel Gas Supply Corporation, Appellant,

v.

Commonwealth of Pennsylvania, Appellees,

West Penn Power Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellees,

Monongahela Power Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellees,

Potomac Edison Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellees,

Interstate Energy Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

PP & L, INC., Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

Safe Harbor Water Power Corporation, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

Pennsylvania Power Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

Ohio Edison Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

Cleveland Electric Illuminating Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

Toledo Edison Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

Luzerne Electric Division of UGI Utilities, Inc., Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

UGI Utilities, Inc., Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

PECO Energy Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

PECO Energy Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

PG Energy Inc., f/k/a Pennsylvania Gas
& Water Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

Safe Harbor Water Power Corp., Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

PP & L Inc., f/k/a Pennsylvania Power
and Light Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Interstate Energy Co., Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

PG Energy, Inc., f/k/a Pennsylvania Gas
& Water Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

West Penn Power Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Potomac Edison Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Monongahela Power Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

PECO Energy Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

PECO Energy Power Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

UGI Utilities, Inc., Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Luzerne Electric of UGI Utilities, Inc., Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Peoples Natural Gas Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

CNG Transmission Corporation, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Allegheny Electric Cooperative, Inc., Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Duquesne Light Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

National Fuel Gas Distribution Corporation, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

National Fuel Gas Supply Corporation, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

New York State Electric & Gas Corporation, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Pennsylvania Power Company, Appellant,

240

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Ohio Edison Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Cleveland Electric Illuminating Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Toledo Edison Company, Appellant,

v.

Gregory C. Fajt, Secretary of Revenue, Appellee,

Allegheny Electric Cooperative, Inc., Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

CNG Transmission Corporation, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

Peoples Natural Gas Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

New York State Electric and Gas Corporation, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

National Fuel Gas Distribution Corporation, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

Duquesne Light Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

National Fuel Gas Supply Corporation, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

West Penn Power Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

Monongahela Power Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

Potomac Edison Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

Interstate Energy Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

PP & L, INC., Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

Safe Harbor Water Power Corporation, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

Pennsylvania Power Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

Ohio Edison Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

Cleveland Electric Illuminating Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

Toledo Edison Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

Luzerne Electric Division of UGI Utilities, Inc., Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

UGI Utilities, Inc., Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

PECO Energy Company, Appellant,

v.

Commonwealth of Pennsylvania, appellee,

PECO Energy Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellee,

PG Energy, Inc. f/k/a Pennsylvania Gas
& Water Company, Appellant,

v.

Commonwealth of Pennsylvania, Appellee.

Supreme Court of Pennsylvania.

Argued May 11, 2004.

Decided June 21, 2005.

244

N. David Rahal, Esq., Robert L. Weldon, Esq., Ronald Scott Shearer, Esq., Joseph C. Bright, Jeffrey S. Stokes, Esq., Harrisburg, for Safe Harbor Water Power Corp.

Michael J. Semes, Esq., N. David Rahal, Esq., Christopher A. Lewis, Esq., Robert P. Harrill, Jr., Esq., Harrisburg, for PECO Energy Company.

Daniel John Doyle, Esq., Bartholomew J. Deluca, Jr., Esq., Harrisburg, for Gregory C. Fajt.

CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Chief Justice CAPPY.

Before this court are the collective appeals of 22 utility companies ("Appellants") from the decision of the Commonwealth Court in *Safe Harbor Water Power Corp., et al. v. Larry P. Williams, Secretary of Revenue*, 825 A.2d 733 (Pa. Cmwlth.2003) wherein that court held that Appellants were not entitled to settlement of their respective tax liability before the Department of Revenue ("Department") initiated collection proceedings. For the following reasons, we affirm that decision and remand to the Commonwealth Court for adjudication of unresolved matters.

These cases regard Appellants' 1997 alleged liability for taxes imposed pursuant to the Public Utility Realty Tax Act ("PURTA").[1] PURTA, by way of background, is a by-product of the ratification of the 1968 Constitution of Pennsylvania in which Article VIII was amended explicitly to subject the real property of public utilities to real estate taxes. Rather than subject the individual utility properties to the various local real estate taxes, Article VIII, Section 4[2] of the Constitution

---

1. 72 P.S. §§ 8101–A–8108–A. PURTA was amended by the Act of May 12, 1999, P.L. 26. Unless specified otherwise, all cites to PURTA in this opinion refer to the Act as it read in 1997.

2. The particular provision reads as follows:

authorized the legislature to provide such revenue by levying on the utilities gross receipts taxes or other special taxes payable to the Commonwealth. To implement the constitutional provision, the General Assembly enacted PURTA in 1970. PURTA permits the Commonwealth to collect the equivalent of a local real estate tax from utilities "at the rate of thirty mills upon each dollar of the State taxable value of its utility realty at the end of the preceding calendar year." 72 P.S. 8102–A(a). Under PURTA, the Department collects the tax from the utilities and distributes those tax revenues to Local Taxing Authorities ("LTA") throughout Pennsylvania, such as counties, municipalities, and school districts. The distribution back to the LTAs is the equivalent of the real estate tax the LTAs otherwise could have imposed on utility real estate (the "realty tax equivalent") and is distributed to the LTAs based upon a formula intended to replace the amount of tax foregone by the LTAs by not levying a real estate tax on the public utilities.

The procedure is as follows. Each year, the Department provides the utility with a form upon which the utility inserts the state taxable value of its real estate subject to the PURTA tax and this figure is multiplied by the tax rate. Based on the

The real property of public utilities is subject to real estate taxes imposed by local taxing authorities. Payment to the Commonwealth of gross receipts taxes or other special taxes in replacement of gross receipts taxes by a public utility and the distribution by the Commonwealth to the local taxing authorities of the amount as herein provided shall, however, be in lieu of local taxes upon its real property which is used or useful in furnishing its public utility service. The amount raised annually by such gross receipts or other special taxes shall not be less than the gross amount of real estate taxes which the local taxing authorities could have imposed upon such real property but for the exemption herein provided. This gross amount shall be determined in the manner provided by law. An amount equivalent to such real estate taxes shall be distributed annually among all local taxing authorities in the proportion which the total tax receipts of each local taxing authority bear to the total tax receipts of all local taxing authorities, or in such other equitable proportions as may be provided by law. Notwithstanding the provisions of this section, any law which presently subjects real property of public utilities to local real estate taxation by local taxing authorities shall remain in full force and effect.

PA. CONST. art. VIII, § 4.

calculation of its liability, the utility remits payment to the Department, along with a sworn statement as to the method of computing the state taxable value. 72 P.S. § 8102–A(a–b).[3] Utilities, like the Appellants, calculate their tax liability based on the net book value of their respective realty. *Id.* An LTA, for its part, files a report of the assessed value of utility realty within its district, the rate of its real estate tax, and the realty tax equivalent obtained by multiplying the assessed value and tax rate. 72 P.S. § 8106–A(a). The Department then must distribute to each reporting LTA its share of the total realty tax equivalent, based on the ratio of each LTA's total tax receipts to the total tax receipts of all LTAs. 72 P.S. § 8107–A. Because the PURTA statute requires the utilities to assess their PURTA tax liability on the net book value of their realty, and the Department distributes the PURTA tax revenue using local assessed value, the revenues collected by the Department and the amounts it disbursed generally are not equal. In fact, from 1970 to 1994, the total PURTA tax revenues collected exceeded the total PURTA distribution to the LTAs.[4] The first year the distribution exceeded the reve-

3. State taxable value is defined by statute as:

> The cost of utility realty, less reserves for depreciation and depletion, as shown by the books of account of a public utility: Provided, that for any public utility which was not required to record annual depreciation on its utility realty prior to enactment of section 503 of the Public Utility Law or Title 66 Pa.C.S. 1703 (relating to depreciation accounts; reports), the depreciation deduction prescribed in this definition shall be the book reserve or fifty per cent of the book cost, whichever is greater.

72 P.S. 8101–A(4).

4. All revenue collected under the PURTA statutes is not for distribution to LTAs. We have recognized that PURTA also raises general fund revenues for the Commonwealth. In *Southeast Delco School District v. Shapp*, 468 Pa. 475, 364 A.2d 292, 294–95 (1976), we held that nothing in Article VIII, 4 of our Constitution prohibits the Commonwealth from utilizing PURTA as a source of general revenue for the state, as long as the minimum realty tax equivalent is distributed to the LTAs. In a subsequent matter, we also found that, in imposing the PURTA tax, the General Assembly contemplated this secondary purpose of providing the Commonwealth with revenues, since a substantial excess of revenues over the constitutional minimum has been collected pursuant to PURTA since Article VIII, 4 went into effect on July 1, 1970. *See*

nue collected was 1994.[5]

The process by which the Department reconciles these shortfalls forms the basis for the instant dispute. The PURTA statute, specifically, 72 P.S. § 8104–A(b), sets forth a mechanism for the Department to assess the utilities with an additional supplemental tax, known as the PURTA Supplementary Tax ("Suptax"). The statute reads:

> If in any calendar year the amount determined by the department pursuant to section 1107–A(a)(2) shall exceed the total amount of tax collected pursuant to section 1102–A(a), the department shall determine the ratio which the amount of such excess bears to the total State taxable value of all utility realty reported to it pursuant to section 1102–A(b). The department shall notify each reporting public utility of such ratio, and it shall be the duty of such public utility, within forty-five days thereafter, to pay to the State Treasurer, through the Department of Revenue, an additional amount of tax equal to the product of (1) such ratio and (2) the State taxable value shown in its report required by section 1102–A(b). The provisions of section 1102–A(c) shall be applicable to such additional amount of tax.

72 P.S. § 8104–A(b).

Thus, when the amount of tax due to be distributed to the reporting LTAs exceeds the amount collected by the Depart-

*Springdale and Wilkins Townships v. Mowod*, 474 Pa. 82, 376 A.2d 983, 987 (1977).

**5.** *See* Wendy Tanaka, *Pennsylvania Electric Utilities Are at Center of Taxing Problems*, Philadelphia Inquirer, October 31, 1999 (stating the shift in the balance between distribution and revenue in the 1990s was the product of "[r]ising property taxes and declining utility property values.") In most years previous to 1997, the Department collected more money from the utilities than it paid out to LTAs. In 1991, for example, the Department collected $60 million more than it paid out; in 1979, more than $80 million than paid out. *See* Reproduced Record ("R.R.") at 129a. From 1970 until 1993, the Department collected an average of $32 million a year in excess of what was paid out to LTAs. However, in 1994, there was a shortfall between revenue collected and disbursements of nearly $2.5 million; in 1995, nearly $3.5 million; in 1996, more than $15 million; and, in 1997, the year at issue herein, there was a $71 million shortfall in revenue. (R.R. 130) and Department's Brief at p. 18.

ment, the Department must calculate a ratio that the utilities are to apply to their reported net book value, the product of which was to be paid to the Department within 45 days.

It is against this historical and statutory backdrop that we now set forth the facts and procedural history of the matters *sub judice*. For the 1997 tax year, the gap between PURTA revenues and the required distributions to LTAs exceeded $71 million. Pursuant to 72 P.S. § 8104–A, on December 22, 1998, the Department sent notices (the "Notices") to Appellants indicating their individual Suptax liability and that the Suptax payment was due to the Department within 45 days or else the utility would be subject to interest and penalty.[6] The individual assessments ranged in amounts from thousands of dollars to more than $22 million. On January 21, 1999, Appellants filed 22 separate Petitions for Review against the Department in the Commonwealth Court pursuant to that court's original jurisdiction seeking declaratory and injunctive relief.[7] Appel-

6. The Notices stated in pertinent part:

[o]n or before October 1 of each year, the Department of Revenue shall distribute to each local taxing authority its share of the total realty tax equivalent. Funding for this distribution is indirectly linked to the Public Utility Realty Tax (PURTA) collected from utility companies under Title 72 P.S. 8102(A)(a). If in any calendar year the amount determined by the Department pursuant to the amount determined by the Department pursuant to § 8107–A shall exceed the total amount of tax collected pursuant to § 8102–A(a), the Department shall determine the ratio which the amount of such excess bears to the total state taxable value of all utility realty reported to it pursuant to § 8102–A(b). In the event that the amount of the distribution exceeds the amount of tax collected, the Department of Revenue is required to assess an additional tax. The 1997 Realty Tax Equivalent shown in the reports required by Title 72 P.S. § 8106–A was $167,503,199. The 1997 State taxable value shown in the reports required by Title 72 P.S. § 8102–A(b) was $3,204,671,382.86. The computed ratio and the amount of additional tax due is calculated below. Please detach the coupon and return it along with full payment in the enclosed pre-addressed envelope. You have 45 days from the date of this notice to remit or satisfy your pro-rata share of additional tax. Failure to timely remit may result in the assessment of interest and underpayment penalties.
R.R. 41a.

7. One of the taxpayer utilities, Allegheny Electric Cooperative, Inc., ("AEC") is an electric cooperative corporation organized pursuant to the Electric Cooperative Corporation Act, Act of June 21, 1937, P.L.

lants asserted, *inter alia,* that the Notices were invoices that started the collection process for the Suptax, and that, pursuant to the Fiscal Code,[8] the Department was to issue individual settlements [9] of the 1997 Suptax *before* sending the Notices and requiring payment.

On February 22, 1999, the Secretary of the Department of Revenue filed preliminary objections in the nature of a demurrer to each of the Appellants' petitions. The essence of the preliminary objections was that the Department met all requirements of the PURTA statute and assessed utilities with the 1997 Suptax in a strictly mechanical, non-discretionary fashion. The Commonwealth Court, by order dated February 23, 1999, consolidated the petitions for purposes of briefing and argument on the Department's preliminary objections. The Commonwealth Court, *en banc,* heard argument on the Department's preliminary objections on May 19, 1999.

While the Commonwealth Court's decision on Appellants' Petitions and the Department's demurrers was pending, the Department initiated collection activities for the delinquent Suptax revenues by filing liens and writs of *scire facias*[10] against the Appellants. Appellants subsequently paid

1969, No. 389 *as amended,* 15 P.S. §§ 12401, *et seq.* (repealed). As an electric cooperative corporation, AEC asserts that it is not subject to PURTA. That claim remains pending before the Commonwealth Court and is not before this court on appeal.

8. 72 P.S. §§ 1–1804.

9. The term "settlement" is used in this context to mean an administrative determination of any amount owed by the taxpayer. *West Penn Power Co. v. Cohen,* 66 Pa.Cmwlth. 263, 443 A.2d 1366, 1367 n. 6 (1982)(hereinafter *"West Penn I")* aff'd, 502 Pa. 25, 463 A.2d 418 (1983)(hereinafter *"West Penn II").* The Commonwealth Court described "settlement" as the administrative determination whereby the Department gives the taxpayer a detailed statement of how the tax was calculated. *Safe Harbor Water Power Corp., et al. v. Judge,* 758 A.2d 259, 262 (Pa.Cmwlth.2000)(hereinafter *"Safe Harbor I").*

10. *Scire facias* means literally "you are to make known, show cause." BLACK's LAW DICTIONARY 1347 (7th ed.1999). A writ of *scire facias* is a mandate to the sheriff, which recites the occasion upon which it issues, which directs the sheriff to make known to the parties named in the writ that they must appear before the court on a given day, and which requires the defendant to appear and show cause why the plaintiff should not be permitted to take some step, usually to have advantage of

the 1997 Suptax assessment and filed for refunds of the Suptax with the Board of Finance and Revenue.

By opinion and order dated August 16, 2000, the Commonwealth Court overruled the Department's preliminary objections. *See Safe Harbor I,* 758 A.2d at 262. The Department did not appeal the *Safe Harbor I* decision, nor file exceptions or motions for reconsideration. The Board of Finance and Revenue denied Appellants' requests for refunds on July 24, 2001. On May 24, 2002, Appellants filed Applications for Special and Summary Relief with the Commonwealth Court. The Applications requested the Department and the Commonwealth to issue refunds of the Suptax with interest, and further to enjoin the Department from collecting the Suptax unless it issued individualized settlements prior to initiating the collection efforts. The Department, on June 7, 2002, filed Responses to Appellants' Applications setting forth its own Counter–Applications for Summary Relief, asking the Commonwealth Court to determine that sending the Notices was proper. Both sides filed briefs and the Commonwealth Court, sitting *en banc,* heard oral argument on April 1, 2003. The Commonwealth Court issued its decision on May 23, 2003, granting the Department's Applications for Relief and denying those of Appellants. *Safe Harbor Water Power Corp. v. Williams,* 825 A.2d 733 (Pa.Cmwlth.2003)(hereinafter *"Safe Harbor II"*). In *Safe Harbor II,* the Commonwealth Court found that the Notices did not constitute the commencement of collection proceedings; the Department need not settle the Suptax, as it was both self-assessing and self-paying; and that PURTA did not mandate settlement as a precondition to enforcement of tax liability.

a public record. The object of the writ of *scire facias* is ordinarily to ascertain the sum due on a lien of record and to give the defendant an opportunity to show cause why the plaintiff should not have execution. The writ of *scire facias* serves the dual purposes of a summons and a complaint, and a writ of *scire facias* is personal process, but the detailed requirements of a pleading are not applied to the writ of *scire facias. See In re Free and Clear Sale,* 801 A.2d 1280, 1284 n. 6 (Pa.Cmwlth.2002) (citations omitted).

■■ Appellants appealed the *Safe Harbor II* decision to this court on July 16, 2003, raising four issues.[11,12] First, Appellants question whether, in an action pursuant to the Declaratory Judgment Act, a decision overruling a demurrer is a final, appealable order where the decision declares the law on the undisputed facts. Second, Appellants question whether the Department's failure to appeal *Safe Harbor I* required the Department and the court in *Safe Harbor II* to follow *Safe Harbor I*. Third, Appellants raise an issue as to whether the Department was required to settle the 1997 Suptax prior to initiating actions to collect the tax; and, finally, whether due process required the Department to refund the 1997 Suptax it collected without issuing settlements.[13]

11. This court has jurisdiction over the instant matters pursuant to 42 Pa.C.S. § 723, which confers jurisdiction on this court for appeals from final orders of the Commonwealth Court when the matter originally commenced in the Commonwealth Court and from final Orders of the Commonwealth Court entered in any appeal from a decision of the Board of Finance and Revenue.

12. This court's review in a tax appeal is to determine whether the trial court abused its discretion, committed an error of law, or rendered a decision unsupported by the evidence. *Glenn Johnston, Inc. v. Commonwealth*, 556 Pa. 22, 726 A.2d 384, 385 n. 1 (1999). As the issues before us involve questions of law, our standard of review is de novo, and our scope of review is plenary. *See Philadelphia Eagles Football Club, Inc. v. City of Philadelphia*, 573 Pa. 189, 823 A.2d 108, 118 n. 11 (2003).

13. *To the extent that the dissenting opinion supports its conclusion by suggesting that the information provided by LTAs is susceptible to variation and thus implicates the uniformity of taxation provision of the Pennsylvania Constitution, art. VIII, 1, it must be said that Appellants did not raise a uniformity of taxation argument in their respective briefs to this Court. The issue, therefore, is waived. Danville Area Sch. Dist. v. Danville Area Educ. Ass'n, 562 Pa. 238, 754 A.2d 1255, 1259 (2000)(holding that appellate courts should not raise issues sua sponte). Moreover, the factual predicate for that facet of the dissent appears to be lacking. First, section 8106–A, 72 P.S. 8106–A, the statute providing for the reports does not address the utilities accounting methods. Additionally, the dissent suggests that utilities employ or may employ a variety of accounting methods in arriving at their state taxable value. This is contrary not only to statute, section 8101–A, 72 P.S. 8101–A, which mandates the net book value method, but also is in contrast to what the majority of Appellants concede at p. 12 of their brief, namely that they employ the net book value method.*

On May 11, 2004, we heard oral argument in this matter limited to: 1.) whether the Department was required to settle the 1997 Supplemental Realty Tax prior to initiating actions to collect the tax; and, 2.) whether the Department violated the due process rights of Appellants, and, if so, was a refund the appropriate remedy.

Having discussed the procedural history of this matter, we now address Appellants' issues. The nature of the first two issues which the Appellants raise permits us to discuss them in tandem.

■ Appellants argue that *Safe Harbor I* was a final declaration of rights of the parties and the Commonwealth is prohibited from attempting to relitigate those declarations of law. Appellants' basis for this conclusion stems from that aspect of their Petitions to the Commonwealth Court seeking declaratory judgment on the Department's duty to settle the Suptax prior to collecting it.

Appellants correctly cite Pennsylvania Rule of Appellate Procedure 341(b)(2) for the proposition that an order is final if it is expressly defined as such by statute. The pertinent statute provides:

Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

42 Pa.C.S. § 7532.

Appellants cite our decision in *Nationwide Mut. Ins. Co. v. Wickett,* 563 Pa. 595, 763 A.2d 813 (2000) as dispositive of this particular issue. In *Wickett,* the trial court was presented with a declaratory action seeking a determination of legal rights of parties to an insurance contract. Huron Insurance ("Huron"), one of the defendants, demurred to the declaratory judgment complaint. *Id.* at 815–16. The trial court sustained

that demurrer and dismissed the complaint as to Huron. *Id.* at 816. One of the remaining parties later attempted to join Huron as an additional defendant. *Id.* Huron demurred to the joinder complaint, and the trial court not only denied what was Huron's second demurrer, but also reversed its prior order sustaining Huron's original demurrer. *Wickett,* 763 A.2d at 816. The Superior Court affirmed. *Id.* Huron, on appeal to our court, asserted the trial court had no jurisdiction to reverse the order originally sustaining Huron's demurrer. *Id.* at 817. Huron contended, and we agreed, that the trial court's original order constituted a final, appealable order under PA.R.A.P. 341(b)(2) and 42 Pa.C.S. § 7532, which served to divest the trial court of jurisdiction to reconsider it more than thirty days after its entry. *Id.* at 818.

The question we resolved in *Wickett* was whether the demurrer order affirmatively or negatively declared the rights, status, and other legal relations of the parties. We said that if the orders did so, then they were immediately appealable orders pursuant to PA.R.A.P. 341(b)(2). *Id.* at 817. Conversely, if no such declarations were made, the orders were interlocutory, and the trial court retained jurisdiction to reconsider them. *Wickett,* 763 A.2d at 817. Huron's original demurrer alleged that the Workers' Compensation Act provided the plaintiff's exclusive remedy and the insurance coverage provided by Huron was unavailable to plaintiffs by operation of then-existing law. *Id.* The trial court sustained Huron's demurrers as it concluded that there was no legal basis for plaintiff's claims against Huron. *Id.* at 817–18. The order substantively declared that the plaintiffs had no legal basis upon which to claim benefits from Huron. Therefore, this order declared the parties' rights, status, and other legal relationships in the context of that action. Consequently, this order was a final, appealable order under PA.R.A.P. 341(b), and the failure by any party to appeal the order on the original demurrer within thirty days of its entry deprived the court of jurisdiction to reconsider that order. *Id.* at 818.

For present purposes then, it follows that we must determine if the Commonwealth Court's order in *Safe Harbor I*

affirmatively or negatively declared the rights, status, and other legal relations and therefore constituted a final order.

Appellants contend that the *Safe Harbor I* decision was a final, appealable order that determined settlement was a prerequisite to collection of the Suptax. This is because the decision in *Safe Harbor I* did not depend on contested facts, but rather was decided purely on the PURTA statute provisions, the Fiscal Code, the *West Penn* decisions and the Notices. Appellants specifically rely on that part of the *Safe Harbor I* decision where the court concluded:

> Once the notice was given that the Suptax was due within 45 days or interest and penalties may be forthcoming, [the Department] obviously intended to use the collection procedures [of the Fiscal Code]. In accordance with *West Penn Power I* and *II*, therefore, [the Department] is now compelled to settle the taxes with the Petitioners.

*Safe Harbor I*, 758 A.2d at 265.

Appellants contend that the *Safe Harbor I* decision, in determining that settlement was a prerequisite to collection of the Suptax, was a final, appealable order because it did not depend upon contested facts. Because the Department failed to appeal *Safe Harbor I,* Appellants contend that the *Safe Harbor II* court was without jurisdiction to overrule *Safe Harbor I.*

We disagree and hold that the *Safe Harbor I* decision was not a final, immediately appealable order. As a matter of substance, Appellants' position cannot stand, as the *Safe Harbor I* court merely overruled the Department's preliminary objections. *See Safe Harbor I*, 758 A.2d at 261 ("Before this Court are the same three preliminary objections.") and 267 ("AND NOW, this 16th day of August, 2000, the Preliminary Objections of [the Department] are overruled and [the Department] is ordered to file answers to the Petitions."). Faced with the Petitions and the demurrers thereto, the *Safe Harbor I* court had to determine whether or not the facts pleaded in the Petitions were legally sufficient to permit those actions to continue. *See Firing v. Kephart,* 466 Pa. 560, 353 A.2d 833,

835 (1976)(stating the role of the court in ruling on preliminary objections in the nature of a demurrer). Contrary to Appellants' assertions, the *Safe Harbor I* courts overruling of the Departments demurrer had no greater effect than to permit Appellants Petitions to go forward. The courts ruling in *Safe Harbor I,* therefore, was interlocutory and not final. *See Rosenwald v. Barbieri,* 501 Pa. 563, 462 A.2d 644, 646 (1983)(holding that an order dismissing preliminary objections is interlocutory, but an order sustaining them is not.).

In this regard, *Safe Harbor I* is in direct contrast to the decision in *Wickett,* where the court *granted* preliminary objections in the nature of a demurrer, concluding that, upon all the facts averred by the plaintiff, there was no legal basis upon which the plaintiff could recover. *Wickett,* 763 A.2d at 817–18; *see also, Willet v. Pennsylvania Medical Catastrophe Loss Fund,* 549 Pa. 613, 702 A.2d 850, 853 (1997)("A court should sustain preliminary objections in the nature of a demurrer only where: the complaint is insufficient to establish the pleader's right to relief."). In the circumstance of granting a demurrer, as was the case in *Wickett,* the court indeed does declare the legal rights of the parties. *See Wickett,* 763 A.2d at 818. This is consistent with our well-settled rules regarding a court's role in ruling on preliminary objections. *See Firing,* 466 Pa. 560, 353 A.2d 833; *Willet,* 702 A.2d at 853.

■ Our foregoing discussion regarding the finality of the *Safe Harbor I* decision thus forecloses Appellants' contentions that the Department's failure to appeal *Safe Harbor I* restricts the Department's ability to relitigate the issues raised in *Safe Harbor I.* Our conclusion in this regard is in accord with that of the *Safe Harbor II* court below. We now address the issue of whether the Department is required to settle the Suptax prior to initiating collection efforts.

The parties' respective positions, generally speaking, are straightforward: Appellants urge us to read *Safe Harbor I* as conclusive of the propositions that the Notices constituted the Department's initiation of collection procedures for the Suptax under the Fiscal Code, and that prior to such collection

efforts, the Department was required to settle the Suptax returns with the taxpayers. Appellants' assertions derive in part from *West Penn I*, which, according to Appellants, mandates that when the Department uses the collection provisions of the Fiscal Code, the Department must settle the return. Appellants likewise assert that our decision in *West Penn II*, affirming *West Penn I*, demands this conclusion. Furthermore, Appellants contend that because there is no tax collection mechanism in PURTA statute, the Fiscal Code collection provision "must be employed." (Safe Harbor Brief at p. 11). Appellants contend that the Department started collection activity against Appellants by issuing the Notices in derogation of rights they assert under *West Penn I* and *II*. Finally, Appellants contend their right to settlement based on their assertion that the Suptax is neither self-assessing nor self-paying.

The Department, to the contrary, argues that the *Safe Harbor II* court arrived at the correct decision by recognizing that Appellants and the *Safe Harbor I* court misinterpreted *West Penn I* and *II*. Moreover, the Department stresses that while we affirmed *West Penn I* in *West Penn II*, Appellants ignore the rationale of the *West Penn II* decision in which we held that the PURTA statutes vest the Department with the discretion to issue settlement as a prerequisite to collection of the initial PURTA tax.

█ Again, we agree with the Department. Addressing the Appellant's arguments however, confronts us with our decision in *West Penn II*, and, as such, the doctrine of stare decisis,[14] which requires us to review the *West Penn* decisions to determine the extent to which stare decisis principles control our resolution of the matters *sub judice*. It must be noted that while the *West Penn* decisions dealt with the initial PURTA tax, the present matters deal with the Suptax. The

14. "The rule of stare decisis declares that for the sake of certainty, a conclusion reached in one case should be applied to those which follow, if the facts are substantially similar, even though the parties may be different." *Northwood Constr. Co. v. Township of Upper Moreland,* 579 Pa. 463, 856 A.2d 789, 799 n. 11 (2004).

distinction is without a difference, as the statute providing for the Suptax, 72 P.S. § 8104–A(b), incorporates the PURTA tax enforcement provision, 72 P.S. § 8102–A(c), which was the focus of our decision in *West Penn II*. *See West Penn II*, 463 A.2d at 421–23. Second, we will address Appellants' contentions regarding the Notices. We begin with a review of the *West Penn* decisions.

*West Penn I*

In *West Penn I*, West Penn Power Company, a utility company subject to PURTA taxation, presented a mandamus and declaratory action to the Commonwealth Court, seeking respectively, an order requiring the Department to settle all initial PURTA tax returns, and second, to declare the Department's duties regarding the administration of PURTA in conjunction with the Fiscal Code. *West Penn I*, 443 A.2d at 1367. The Commonwealth Court refused to grant mandamus relief on grounds that the utility failed to meet the standard for such extraordinary relief and because the court held as a matter of law that, under the Fiscal Code provisions, the Department need not settle all PURTA tax returns. *Id.* at 1368.

The *West Penn I* court, in resolving the declaratory action, examined the statutory language imposing the PURTA tax, 72 P.S. § 8102–A, and noted that, because the PURTA tax was self-assessing, as each reporting utility multiplied the tax rate by its own valuation of the state taxable value of its property, settlement was not necessary for every PURTA tax return. *Id.* The court further stated that the statute permitted the enforcement of payment obligations "by any means provided by law for the enforcement of payment of taxes to the State." *Id.* at 1368–69 (quoting 72 P.S. § 8102–A(c)). Should a utility fail to make a return or the Department determined an underpayment by the utility, the *West Penn I* court decided that the Department had the *discretion* to utilize the enforcement provisions of the Fiscal Code to collect past due revenues. *West Penn I*, 443 A.2d at 1369. (emphasis supplied). Moreover, the court cited its own decision, *Heller v. Depuy*, 2

Pa.Cmwlth. 196, 277 A.2d 849, 861 (1971) for the proposition that the "provisions of the Fiscal Code *could be used* by the Department of Revenue to enforce payment of the tax." *West Penn I*, 66 Pa.Cmwlth. 263, 443 A.2d 1366, 1369 n. 11 (1982)(emphasis supplied).

The Commonwealth Court specifically ordered in *West Penn I* that if the Department intends to use the collection provisions of the Fiscal Code, then the utilities were entitled to a settlement of their tax returns. *See West Penn I*, 443 A.2d at 1370.

*West Penn II*

West Penn Power Company appealed the Commonwealth Court's denial of its request for mandamus relief in *West Penn I* and requested that we order the Department to issue settlements for initial PURTA tax returns. *West Penn II*, 463 A.2d at 419–20. We noted in *West Penn II* that it is well-settled that, in weighing such a request, mandamus relief will lie only to compel performance of a required act, but does not lie to compel a discretionary act. *Id.* at 421 (citing *Schrader v. Lehighton Borough*, 407 Pa. 357, 180 A.2d 230, 231 (1962)). In *West Penn II*, we stated that the Fiscal Code and the PURTA statute do not contain mandatory provisions for the settlement of certain taxes prior to collection. We also cited several revenue statutes that clearly mandated settlement prior to collection. Referring to the initial PURTA tax statute, we said, "[i]t is clear that the legislature could and probably would have included such directions if they were deemed appropriate to this type of levy." *West Penn II*, 502 Pa. 25, 463 A.2d 418, 421–22.

We also reviewed the language of 72 P.S. § 8102–A(c), and found that, rather than mandating settlement procedures, this statute supplies the Department with the *discretion* to enforce a taxpayer's liability with any means provided for in the collection of other revenues. *Id.* The statute reads as follows:

Payment of the tax hereby imposed may be enforced by any means provided by law for the enforcement of payment of taxes to the State. If the tax hereby imposed is not paid by

the date herein prescribed, or within any extension granted by the department, the unpaid tax shall bear interest at the rate of one per cent per month, and shall in addition be subject to a penalty of five per cent of the amount of the tax, which penalty may be waived or abated, in whole or in part, by the department unless the public utility has acted in bad faith, negligently, or with intent to defraud.

72 P.S. § 8102–A(c).

From this statutory language, we found no specific directive requiring settlement prior to collection, and concluded that, in the absence of an explicit mandate requiring settlement, the General Assembly merely vested the Department with the discretion to issue settlement pursuant to 72 P.S. § 801(d) of the Fiscal Code.[15] *West Penn II*, 463 A.2d at 420. Moreover, we did not address the issue of whether the PURTA tax was self-assessing in arriving at our holding in *West Penn II*. We held the taxpayer's remedy for overpayment of PURTA taxes is a refund petition under Section 503(a)(4) of the Fiscal Code, 72 P.S. § 503, which applies to instances where a court has found a prior interpretation of a tax law erroneous. *Id.*

Appellants would have us believe that our holding in *West Penn II* bound the Department to use the full panoply of tools and procedures under the Fiscal Code to collect the Suptax. However, this argument is premised upon the point that, when the Department issued the Notices, it was evincing its intent to use the collection provisions of the Fiscal Code.

■ As we stated in *West Penn II*, neither the plain language of the Fiscal Code nor the statute providing for the enforcement of PURTA tax, 72 P.S. § 8102–A(c), lend themselves to the interpretation Appellants put forward. There is nothing within Section 8102–A(c) that is even suggestive of the

---

15. This statute reads in pertinent part:

 If the Department of Revenue shall not be satisfied with the payment of tax, as made and returned by the officers of any corporation, joint-stock association, limited partnership, or other company, it is hereby authorized and empowered to settle an account on the valuation thus made for taxes, bonus, penalties, and interest, due the Commonwealth.

 72 P.S. § 801(d).

espoused position that, as precursor to collecting the Suptax, the Department is required to settle Suptax returns. The Suptax provision, 72 P.S. § 8104–A, by integrating Section 8102–A(c), merely states that the Department can employ, as a means of collecting the Suptax, any means provided by the Fiscal Code to enforce other taxes due to the state. Section 8102–A(c) does not incorporate by reference the enforcement procedures of the Fiscal Code. It does not mandate the Department to follow lock-step those procedures, nor does it set forth a procedure parallel to that of the Fiscal Code for the enforcement of tax liability. Section 8102–A(c) does not suggest that, should the Department choose to employ the coercive tools set forth in the Fiscal Code, e.g., a lien or writ of *scire facias,* that the Department can only do so in the manner prescribed by the Fiscal Code. The statutory language provides options, it does not prescribe procedures. We stand by our rationale in *West Penn II* where we stated that if the General Assembly wanted to provide such direction, it would have done so.

Finally, Appellants contend, based on *Safe Harbor I,* that the Department, by issuing the Notices, initiated collection procedures under the Fiscal Code. Since the Notices evidenced intent by the Department to utilize the Fiscal Code collection provisions, Appellants assert they were entitled to settlements and the attending predeprivation appeal process prior to the issuance of the Notices. Appellants' argument on this facet of their claim is erroneous, as the *Safe Harbor I* court's conclusion supporting it is based on that court's misunderstanding of the PURTA tax and Suptax statutes. The *Safe Harbor I* court's basic misapprehension as to how these statutes operate informed its subsequent conclusion as to the Notices, and, ultimately, its conclusions regarding the Department's responsibilities.

 The *Safe Harbor I* court, in reciting the PURTA return process, stated the following: "If [the Department] feels that the taxpayer owes additional [PURTA] tax, [the Department] must challenge the taxpayers calculation but, in that event, [the Department], not the utility taxpayer, makes

the calculation and assesses the taxpayer an additional supplemental tax, (the Suptax)." *Safe Harbor I*, 758 A.2d at 263. The *Safe Harbor I* court subsequently asserted that the Department was dissatisfied with the valuations set forth in Appellants' 1997 PURTA returns and the Notices set forth different valuations and demanded the Suptax as recompense for the difference in valuations. *Safe Harbor I*, 758 A.2d at 264. These statements are incorrect and confuse two related, but distinct statutory provisions, each of which serves a related, but distinct purpose. The Suptax, contrary to the *Safe Harbor I* decision, does not serve as a means by which the Department duns a particular utility for filing a PURTA tax return with a suspect valuation or deficient payment. The Suptax, as we explained previously in this opinion, is a statutory mechanism by which the Department addresses revenue shortfalls, not based on discrepancies in individual returns, but rather for those situations where disbursements to LTAs exceed revenues collected from all utilities subject to PURTA taxation. The *Safe Harbor I* court's narrow view of the Suptax is not supported by the statutory language providing for the PURTA tax and Suptax, which are unequivocal in this regard. *See* 72 P.S. §§ 8102–A and § 8104–A.

The Notices were the Department's response to a specific condition, both of which are prescribed by statute. *See* 72 P.S. § 8104–A(b). Triggered by the presence of a projected shortfall between the amount of the PURTA valuations submitted by the utilities and the cumulative realty tax equivalents submitted by the LTAs, Section 8104–A(b) requires the Department to provide the reporting utilities with a ratio by which the burden of the deficit-reduction is to be shouldered by the reporting utilities and a payment deadline. There was no discretion, contrary to the *Safe Harbor I* decision, exercised in determining the necessity for the Suptax, nor in the transmittal of the Notices to Appellants. The Notices cannot be equated with enforcing the liability of unpaid taxes.

When it comes to enforcing liability for taxes prescribed by the PURTA statute, our decision in *West Penn II* and in the instant matters, stand for the propositions that 72

P.S. § 8102–A permits the Department to use any lawful means to collect unpaid PURTA and Suptax revenue and that the Department has the discretion to issue settlements. *See West Penn II*, 463 A.2d at 420. In summary, we hold that the PURTA statutes do not require the Department to issue settlement as a precursor to delivering the notices prescribed by Section 8104–A.

▮▮▮ Appellants contend that the Department's initiation of collection actions in the absence of what they assert are their rights to predeprivation settlement amounts to a prima facie violation of due process rights guaranteed to them by the 14th Amendment to the United States Constitution and Article I, § 9 of the Pennsylvania Constitution.[16]

Appellants argue that the PURTA statute, Fiscal Code and our decisions in *West Penn I* and *II* combine to compel the Department to issue settlement of Suptax returns as a prerequisite to the Department's collection activities. The settlement process, Appellants contend, provides taxpayers with the opportunity to challenge both the necessity and calculations of individual liability for the Suptax assessment. Because the Department failed to afford them any predeprivation process, and because the liens had a deleterious effect on their opera-

16. Appellants incorrectly assert that, in matters regarding taxation, we have held that the guaranties of due process found in the United States and Pennsylvania Constitutions are coterminous. Appellants cite *Commonwealth v. Girard Life Ins. Co.*, 305 Pa. 558, 158 A. 262 (1932), *aff'd* 287 U.S. 570, 53 S.Ct. 94, 77 L.Ed. 501 (1932) for this proposition. That case, however, dealt with the Uniformity Clause of our constitution and the Equal Protection Clause, not the Due Process Clause, of the 14th Amendment to the U.S. Constitution. *See Girard* 158 A. at 263. "The uniformity clause ... reflects obvious equality concerns, (allocating the burden of taxation equally upon 'the same class of subjects')." Robert F. Williams, *Pennsylvania's Equality Provisions, in* THE PENNSYLVANIA CONSTITUTION, A TREATISE ON RIGHTS AND LIBERTIES, 731, 737 (Ken Gormley, et al. eds., 2004). Indeed, we have held that in matters of taxation, allegations of violations of the Equal Protection Clause, and of the Uniformity Clause are to be analyzed in the same manner. *Leonard v. Thornburgh*, 507 Pa. 317, 489 A.2d 1349, 1351 (1985). Appellants' do not raise equal protection or uniformity claims. Additionally, resolution of Appellants' constitutional claims does not require a due process analysis, and therefore, this case does not require us to determine whether the guaranties of due process are coterminous under the United States and Pennsylvania Constitutions.

tions, Appellants assert they paid the Suptax under duress. The Department's disregard for Appellants' rights constituted a due process violation for which a refund is the only viable remedy.

Appellants cite *McKesson v. Division of Alcoholic Beverages*, 496 U.S. 18, 37, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990) for the proposition that, when a state exacts a tax from its citizens, "the root requirement of the Due Process Clause [is] that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." Appellants argue *McKesson* prohibits the Department from ignoring the statutorily-mandated predeprivation process of settlement before collection. Appellants ask us to equate our decisions [17] ordering refunds to entities deprived of timely settlements to the matters *sub judice.* Appellants contend this is the only meaningful remedy to the Department's disregard of their obligation to issue settlement before collection activity.

The Department counters that Appellants' due process argument fails as its central premise—the requirement of settlement before collection of the Suptax—is unsustainable. There is no settlement requirement before the Department sent the Notices. Due process is served, according to the Department, by the refund mechanism which is replete with due process safeguards. Through this postdeprivation procedure, the Department argues, taxpayers, like Appellants, are afforded the opportunity to challenge their liability. 72 P.S. § 503; *see also, West Penn II*, 463 A.2d at 425. What is more, the Department claims that Appellants' plea for a predeprivation remedy is mandated neither by this court, nor by the United States Supreme Court. *McKesson*, the Department contends, stands for the position that "a state need not provide predeprivation process for the exaction of taxes." *McKesson*, 496 U.S. at 51–2, 110 S.Ct. 2238. The Department holds our decision in

---

**17.** *See e.g., Commonwealth v. Allied Building Credits, Inc.,* 385 Pa. 370, 123 A.2d 686 (1956)(holding that statutorily-required settlement of corporate net income taxes must be performed within the prescribed time limits).

*Cedarbrook Realty, Inc. v. Nahill,* 484 Pa. 441, 399 A.2d 374 (1979), as dispositive on the adequacy of the refund remedy. In that decision, we held that where an adequate postdeprivation remedy exists, "summary proceedings to secure prompt performance of pecuniary obligations have been consistently sustained." *Cedarbrook,* 399 A.2d at 377 (citations omitted). The Department stresses that no due process violation can occur when the taxpayer, though having paid the tax under protest, can appeal that payment. The exigencies of government demand a continuing stream of tax revenue and the ability of taxpayers to withhold payment of taxes based on disputes could have a crippling effect on the efficient delivery of government services. *Id.* at 379.

We agree with the Department that it did not violate Appellants' due process rights in the collection of the 1997 Suptax. *McKesson* is inapt for the simple reason that the underlying tax for which taxpayers sought relief had been declared unconstitutional and the state, Florida, refused to refund the revenue generated by the unlawful tax. *McKesson,* 496 U.S. at 23–4, 110 S.Ct. 2238.[18] The underlying tax in the instant appeals has not been declared illegal, and the exaction of those revenues therefore was not unlawful. Moreover, we cannot accept Appellants' contention that the Department's collection of the Suptax was unlawful. Appellants' contentions to the contrary, we find no support for their assertion of entitlement to a predeprivation process. The linchpin of Appellants' due process argument rests exclusively on its assumption that the Department is bound to the collection procedures of the Fiscal Code, from which they base their entitlement to settlement of Suptax returns as a prerequisite to collection activities, e.g., liens and writs of *scire facias.*

18. Justice William Brennan, writing for the unanimous court in *McKesson,* stated:

> Our precedents establish that if a state penalizes taxpayers for failure to remit their taxes in a timely fashion, thus requiring them to pay first and obtain review of the tax's validity later in a refund action, the Due Process Clause requires the State to afford taxpayers a meaningful opportunity to secure postpayment relief for taxes already paid pursuant to a tax scheme ultimately found unconstitutional. *McKesson,* 496 U.S. at 22, 110 S.Ct. 2238.

Because we hold today that the PURTA statutes, and our interpretation of such in *West Penn II*, do not support this assumption, *a fortiori* the Department did not violate Appellants' due process rights in the collection of the Suptax without first issuing settlements.

*McKesson*, in its recitation of cases involving due process and the exaction of tax revenue, stands for the broad proposition that a party who chooses to challenge the legality of a tax should have a "clear and certain remedy." *McKesson*, 496 U.S. at 32, 110 S.Ct. 2238 (quoting *Atchison, T. & S.F. R. Co. v. O'Connor*, 223 U.S. 280, 32 S.Ct. 216, 56 L.Ed. 436 (1912)). The *McKesson* court noted that a state may choose to provide a form of predeprivation process in the challenge to the collection of taxes. However, this is not necessary to conform to due process requirements.

> [W]hereas "we have described the 'root requirement' of the Due Process Clause as being 'that an individual be given opportunity for a hearing before he is deprived of any significant property interest' ", *it is well established that a State need not provide predeprivation process for the exaction of taxes.* (citations omitted)(emphasis supplied).

*McKesson*, 496 U.S. at 36, 110 S.Ct. 2238. Similarly, in *Reich v. Collins*, 513 U.S. 106, 108, 115 S.Ct. 547, 130 L.Ed.2d 454 (1994), Justice Sandra Day O'Connor, writing for the unanimous Court, stated, "[a] state has the flexibility to provide [a] remedy before the disputed taxes are paid (predeprivation), after they are paid (postdeprivation), or both."

 Appellants' due process rights are not denied by the existing regime of a postdeprivation refund process under 72 P.S. § 503. Thus, we remain confident in our decision in *Cedarbrook*, that predeprivation process is not required in the exaction of taxes, especially where, as is the case at bar, a mechanism exists for postdeprivation proceeding with a "clear and certain" refund remedy. Because we conclude that the Department did not violate Appellants' due process rights, any discussion of the suitability of a refund as a remedy for such is unnecessary.

## CONCLUSION

We affirm the decision of the *Safe Harbor II* court, inasmuch as we agree first: that the order in *Safe Harbor I* was not a final, appealable order, since it merely overruled the Department's demurrer; second, that the Department is not obligated to issue settlement prior to delivering the notices prescribed by 72 P.S. § 8104–A; and third, that the Department did not violate Appellants' due process rights. In conclusion, we remand to the Commonwealth Court to resolve any outstanding issues.

Justice NEWMAN files a concurring and dissenting opinion.

Justice SAYLOR files a dissenting opinion.

Justice NEWMAN, concurring and dissenting.

I join the Majority in its determination that the Commonwealth Court was not bound by its August 16, 2000 decision that: (a) the Suptax was not self-assessing and self-paying; (b) the Suptax notices issued by the Department of Revenue (Department) constituted initiation of collection activities requiring the Department to engage in settlements prior to attempting collection; and (c) the utilities were entitled to use their mandatory appeal rights before they had to pay the Suptax. *See Safe Harbor Water Power Corp. v. Judge,* 758 A.2d 259 (Pa.Cmwlth.2000). However, I believe that the Commonwealth Court erred in deciding that Appellants are not entitled to settlement of the Suptax prior to payment and join the Dissenting Opinion of Mr. Justice Saylor. I agree with the Dissent that the post-deprivation process fails scrutiny pursuant to the Due Process Clause and the principles articulated in *McKesson Corp. v. Div. of Alcoholic Beverages and Tobacco, Dep't of Bus. Regulation of Florida,* 496 U.S. 18, 39, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), and that, because the Suptax is not self-assessing and self-paying, Appellants are entitled to meaningful pre-deprivation process.

Justice SAYLOR, dissenting.

I agree with the majority that the existence of an adequate post-deprivation procedure for challenging an asserted tax obligation and obtaining a concomitant remedy will ordinarily satisfy the dictates of the Due Process Clause. Here, however, Appellants raise a substantial question concerning the adequacy of the post-deprivation procedure actually afforded them.

It is undisputed that Appellants' initial PURTA tax (the "surtax") is self-assessing: each year, the taxpayer calculates how much it owes under PURTA, submits this calculation to the Department of Revenue (the "Department"), and pays the tax. The supplemental assessment (the "suptax") is an entirely different matter. It is unclear in any given year whether any suptax payment will be required. This depends on whether the realty tax equivalent, *see* 72 P.S. § 8101–A(6), exceeds the cumulative total of the surtaxes paid by all utilities. A utility taxpayer lacks access to this information, and it is thus unaware of the existence or size of any shortfall until it receives a notice from the Department listing the ratio to be multiplied by its state taxable value, and demanding remittance of the suptax obligation within 45 days on pain of penalties and interest.[1]

As suggested above, a utility's suptax liability is directly controlled by the reports filed by the LTAs pursuant to Section 1106–A, 72 P.S. § 8106–A, listing their individual realty tax equivalents, as well as the returns filed by all other Pennsylvania utilities pursuant to Section 1102–A, 72 P.S. § 8102–A, specifying their state taxable value and their resultant surtax liabilities. These reports may be highly subjective, as they depend upon the LTAs' own methods of determining the assessed value of the real estate involved, the

1. In this regard, I do not concur with the Commonwealth Court's characterization of the suptax obligations as "self-assessing." *Safe Harbor Water Power Corp. v. Williams*, 825 A.2d 733, 742 (Pa.Cmwlth. 2003). As discussed, the taxpayers lack the information necessary to compute the PURTA assessment ratio, and must rely upon the Department to supply that figure as part of the notice of tax due and payable. *See* RR. 41a.

LTAs' own determinations as to how to calculate their total tax receipts, and the other utilities' specific accounting methods utilized in determining their state taxable values. While Appellants would appear to retain the right to participate in any Departmental audit of the annual reports of the LTAs, see 61 Pa.Code § 159.1(d), they lack access to other utilities' PURTA tax returns. Without this information, it is impossible to determine whether the other utility companies have paid their commensurate share of the initial PURTA tax, including whether the assessments against similarly situated utilities were uniformly ascertained in compliance with the Pennsylvania Constitution, see PA. CONST. art. XIII, § 1 (pertaining to uniformity of taxation), or whether the Department acted correctly in accepting and/or settling these returns.[2] In light of the above, it is evident that, absent some procedure by which these figures can be aired and tested, Appellants do not have the ability to confirm the accuracy of the data from which their own suptax liability is calculated.[3]

In accordance with the analysis furnished by the majority, Appellants' substantial disadvantage in this regard may not serve as an adequate predicate to permit them to resist payment of the tax, so long as the Commonwealth provides a

**2.** Although each utility company must calculate its tax liability premised upon its state taxable value, see 72 P.S. § 8102–A, and this value is statutorily defined as the cost minus depreciation as per books of any qualifying piece of realty, see 72 P.S. § 8101–A(4), the methodology is not insulated from controversy, as reflected in litigation surrounding the allowable manner of determining asset depreciation, see, e.g., PP&L v. Commonwealth, 828 A.2d 1181 (Pa.Cmwlth.2003); PECO Energy Co. v. Commonwealth, 828 A.2d 497 (Pa.Cmwlth.2003), exceptions overruled en banc, 848 A.2d 1099 (Pa.Cmwlth.2004), appeal pending, 73 MAP 2004, as well as, more generally, the question of whether a given parcel of realty is covered by this provision in the first instance. See, e.g., Commonwealth v. Philadelphia Elec. Co., 472 Pa. 530, 372 A.2d 815 (1977). Without access to the relevant calculations, moreover, there is no opportunity for a given utility to assess whether the accounting methods employed by other utility companies were applied correctly or the arithmetic computations involved were performed without error.

**3.** Indeed, the Departmental notices do not even state the total size of the shortfall. Hence, the taxpayers are left without the ability, pre-deprivation, to assess whether the Department correctly calculated the PURTA assessment ratio based upon the shortfall and the cumulative state taxable value shown in the Section 1102–A(b) reports.

later cure by supplying an adequate post-deprivation procedure meeting the minimum requirements of due process. The United States Supreme Court has clarified that, in the field of taxation, if a state fails to offer any predeprivation process its post-deprivation proceedings must be "meaningful" in that they must provide taxpayers with a "fair opportunity to challenge the accuracy" of their tax obligations. *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, Dep't of Business Regulation of Florida,* 496 U.S. 18, 39, 110 S.Ct. 2238, 2251, 110 L.Ed.2d 17 (1990). Plainly, there can be no meaningful post-deprivation opportunity to challenge the accuracy of a suptax assessment unless the taxpayer has access to all the other utilities' PURTA returns (which, as noted, have a direct effect upon the taxpayer's suptax obligation), as well as the Department's records memorializing the manner in which it computed the PURTA assessment ratio.[4]

As discussed, Appellants contend that they lack the necessary information to determine the correctness of the Department's suptax assessment, as some of the necessary records are confidential under the Fiscal Code,[5] which, *inter alia,* prohibits the divulgence of tax returns submitted to the Commonwealth except for "official purposes." *See* 72 P.S. § 731. While there may be some basis to argue that the official-purposes exception provides the trial court with discretion to require disclosure of these returns during post-deprivation judicial review, *see Commonwealth v. Mellon Nat'l Bank & Trust Co.,* 360 Pa. 103, 111–12, 61 A.2d 430, 435 (1948), *overruled in part on other grounds, Commonwealth v. Caplan,* 411 Pa. 563, 568 n. 4, 192 A.2d 894, 896 n. 4 (1963), I am unaware of any authority stating that the trial court *must* compel such disclosure; indeed, Appellants' present efforts to

---

4. PURTA was amended after the tax period in question to specify that the LTAs' Section 1106–A reports are public documents, notwithstanding Section 731 of the Fiscal Code. *See* 72 P.S. § 8106–A(c) (as amended by the Act of May 12, 1999, P.L. 26, No. 4, § 20). It appears that the utilities' PURTA returns, however, remain confidential. In the present case, they were not disclosed to Appellants during discovery, as discussed *infra.*

5. Act of April 9, 1929, P.L. 343 (*as amended,* 72 P.S. §§ 1–1804).

view this information were not entirely successful, as the Commonwealth Court merely allowed redacted copies of certain of the utilities' returns to be viewed by Appellants' counsel only, and expressly prohibited Appellants themselves from having access to this data. *See* RR. 257a–58a. It thus appears that, even on post-deprivation review, the taxpayers were left with insufficient data to assess the accuracy of the Department's derivation of the PURTA assessment ratio, which directly determined the size of their suptax obligation. As the Commonwealth Court stated in its initial opinion overruling the Department's preliminary objections:

> The Commonwealth avers that the utilities' problems with any lack of information will be solved merely by first paying the tax as demanded and then filing for a refund. . . . Here, Petitioners cannot meet their burden of proof in the refund process because the documents, assumptions, determinations and calculations are in the exclusive control of [the Department]. Without such information a refund petition cannot be properly drafted and there would be no substantial evidence in the record to sustain an administrative appeal to the Board of Finance and Revenue or to this Court.

*Safe Harbor Water Power Corp. v. Judge,* 758 A.2d 259, 266 (Pa.Cmwlth.2000).[6]

Under these circumstances, I would conclude that the post-deprivation process fails scrutiny under the Due Process Clause pursuant to the principles announced in *McKesson,* and would, accordingly, require a full refund of the suptaxes paid pending settlement (or other reasonably structured) proceed-

6. The Department maintains that the post-deprivation procedures provided by the Commonwealth comport with due process because Appellants have available administrative and judicial review, and during such review they are guaranteed the right to representation by counsel, oral and deposition testimony, affidavits and subpoenas, a written decision, and the like. *See* Brief for Appellees at 22–23. Absent access to the information necessary to test the accuracy of the amount of tax owed as stated by the Department, however, these facets of the post-deprivation process do not, by themselves, satisfy the *McKesson* standard as recited above.

ings at which Appellants can assess the accuracy of their tax obligations as reflected in the Department's notices.